687 So.2d 583 (1997)
Poul HOLMGARD, Individually and on Behalf of Evb Eurovest Benelux,
v.
FIRST NATIONAL BANK OF COMMERCE.
No. 96-CA-0853.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1997.
*584 Ryan & Serou, L.C., Gordon P. Serou, John H. Ryan, New Orleans, for Plaintiff/Appellant.
Sessions & Fishman, L.L.P., Sally A. Shushan, John W. Hite, III, Brian D. Roth, New Orleans, for Defendant/Appellee.
Before BYRNES, ARMSTRONG and JONES, JJ.
JONES, Judge.
Appellants Poul Holmgard and EVB Eurovest Benelux (Holmgard) appeal a judgment of the trial court granting exceptions of no cause of action and prescription filed by Appellee, First National Bank of Commerce(FNBC).
The facts as alleged in Holmgard's petition filed in the district court are as follows: Poul Holmgard, a citizen of Denmark, instituted this action on his own behalf and on behalf of EVB Eurovest Benelux, an investor group composed of citizens of Denmark. In its petition for damages, Holmgard sought damages, interest and attorneys' fees from FNBC for losses allegedly suffered because of the handling of a bank deposit of $199,985 ($200,000 less an apparent processing fee of $15.00).
Holmgard alleged that on October 23, 1992, it issued a facsimile transmission to FNBC advising FNBC that it had instructed its bank in Denmark to transfer $200,000.00 to FNBC for placement in a custodial account for Rhodes Management, Inc. (Rhodes). Holmgard advised FNBC that the money was to be deposited to a "custodial account for Rhodes Management, Inc. as *585 specified in the appendix to this letter."[1] The appendix contained a statement informing the Bank that the funds were to be employed exclusively to capitalize a debenture trading account identified by Phoenix Trust as Trading Account No. 33.28.1060. According to Holmgard, FNBC acknowledged receipt of the transfer of funds. Holmgard further alleged that Rhodes "withdrew the funds with the cooperation of FNBC and in violation of the written contract of deposit between FNBC and plaintiffs." When Holmgard subsequently requested an accounting, and later requested the return of the "deposit with FNBC", FNBC failed to respond to the request. On October 11, 1995, Holmgard instituted the current litigation by filing a petition for damages alleging that FNBC, as a depositary bank, owed a duty to preserve and safeguard its deposit in accordance with the provisions of La. C.C. arts. 2937 et seq. Holmgard alleged that, having allegedly violated its duty by allowing Rhodes to withdraw the funds from the custodial account, FNBC was liable for Holmgard's damages.
In response to Holmgard's petition, FNBC filed peremptory exceptions of no cause of action and prescription. In its exceptions FNBC argued 1) the laws of deposit are not applicable to this transaction, 2) FNBC had no fiduciary duty to Holmgard, and 3) FNBC had no authority to restrict Rhodes' withdrawals from Rhodes's account with FNBC. For these reasons, FNBC argued that Holmgard's petition failed to state a cause of action against FNBC. Additionally FNBC argued any alleged claim arising out of the transaction was for tort, not contract, and the prescriptive period for bringing the action was one year.
Holmgard filed a motion for partial summary judgment on the issue of whether Holmgard had a contract of deposit with FNBC and was entitled to return of its deposit. The trial court granted FNBC's exceptions and dismissed all claims asserted by Holmgard with prejudice. The trial court did not rule on Holmgard's motion for summary judgment.

DISCUSSION AND LAW
On appeal, Holmgard urges three assignments of error. First, Holmgard argues the trial court erred in granting FNBC's exception of no cause of action. Next, Holmgard argues the trial court erred in granting FNBC's exception of prescription. Finally, Holmgard argues the trial court erred in failing to grant its motion for summary judgment on the issue of whether a contract existed between Holmgard and FNBC. For the reasons discussed herein, we affirm the judgment of the trial court.
Holmgard's argument that the trial court erred in granting FNBC's exception of no cause of action has no merit.
In determining whether the allegations of a petition are sufficient to withstand an exception of no cause of action, the Court is required to accept as true all factual allegations of the petition. However, the Court is not required to accept conclusions of law. Guaranty Corp. v. Gamble, 608 So.2d 214, 215 (La.App. 4th Cir.1992), writ denied, 614 So.2d 80 (La.1993). The documents attached to Holmgard's petition speak for themselves. Consequently, the factual allegations of this case are not in dispute. The only thing at issue in this case is the legal significance to be given to the facts.
Holmgard's argument that FNBC breached a fiduciary duty to safeguard the money deposited to Rhodes' account is based primarily upon its belief that Louisiana's laws on deposit apply to this case.
The obligations of a depositary are set forth in La. C.C. art. 2926 et seq. La. C.C. art. 2926 defines deposit as, "an act by which a person receives the property of another, binding himself to preserve it and return it in kind." La. C.C. art. 2944 provides:
The depositary ought to restore the precise object which he received.

*586 Thus a deposit of coined money must be restored in the same specie in which it was made, whether it has sustained an increase or diminution of value.
The language of these articles evidence an intent to limit a depositary's obligation to receive the item and return the identical item which was delivered for safekeeping. Generally speaking, the depositary articles have been held applicable to a custodial or safekeeping relationship and has been applied to circumstances involving missing, stolen, damaged or destroyed merchandise, deposits at dry cleaners, parking lots and garages and stolen or damaged automobiles. See Rubin, M.H., "Bailment and Deposit in Louisiana," 35 La. L.Rev. 825, 845-850 (1975).
Holmgard relies extensively upon dicta in City Nat. Bank of Baton Rouge v. Louisiana Sav. Bank & Trust Co., 216 La. 262, 43 So.2d 602 (1949) to support his contention that a deposit of money in a bank account can be considered an irregular deposit. However, see Miller v. Bank of New Orleans, 426 So.2d 1382, 1383 (La.App. 4th Cir.1983) for the view that where a deposit in a bank account does not involve the restoration of the identical object tendered, the Louisiana Civil Code Articles governing contracts of deposit are not applicable. Rather such transactions create a debtor creditor relationship. In Miller v. Bank of New Orleans and Trust Company, id. at 1383, this court stated:
It is well recognized that a bank deposit creates a creditor-debtor relationship. The articles dealing with deposits are not applicable because a bank deposit does not involve the restoration of the identical object tendered. Gumbel v. Abrams, 20 La. Ann. 568 (1868), Tenark Construction Corporation v. Great American Mortgage Investor [Investors], 431 F.Supp. 863 (W.D.La.1977).
Furthermore, an essential condition of a deposit is that the thing deposited can be identified. In Re Louisiana Savings Bank and Safe Deposit Co., 40 La.Ann. 514, 4 So. 301 (1888).
Id. at 1383.
Also, see Tenark Const. Corp. v. Great American Mortg. Investors, 431 F.Supp. 863 (W.D.La., 1977), affirmed, 566 F.2d 105 (5th Cir.1978) and Davis v. Miller Builders & Developers, Inc., 340 So.2d 409, 412 (La.2nd Cir.1976).
However, we need not concern ourselves with the question of whether to follow the dicta in the City National Bank line of cases or the Miller v. Bank of New Orleans line of cases. The cases relied upon by Holmgard all predate Title 6 of the Louisiana Revised Statutes (the "Louisiana Banking Law") which was enacted by the Legislature in 1984. The comments to § 1 of Title 6 states "This section is new and is added in order to make it clear that this and the following chapters are intended to be a comprehensive statement of the law relating to banks."
Notwithstanding the provisions on deposits, it is the opinion of this Court that the transaction forming the basis for this litigation is governed by the provisions of the Louisiana Banking Law, more specifically, La. R.S. 6:317 and La. R.S. 6:1124.
La. R.S. 6:317 provides:
§ 317. Ownership of deposited funds
A bank may conclusively rely on any application, agreement, or signature card used to establish a deposit account as establishing ownership of any and all funds and other credits deposited therein, and may consider and treat any and all funds on deposit in such an account as belonging to and the sole and exclusive property of the depositor or depositors named on the account application, agreement or signature card, unless otherwise notified or directed by such depositor or deposit. (emphasis added)
Pursuant to the provisions of this section, FNBC had a right to treat the funds as belonging to Rhodes Management. FNBC had no authority to keep Rhodes Management from withdrawing funds out of its own account.
Further, Holmgard's argument that FNBC had a fiduciary duty to safeguard the funds sent via the wire transfer is also based on Holmgard's belief that an implied agreement was created via the language in the facsimile transmission. The fax, which was *587 sent to FNBC's main office, stated in relevant part:
With this telefax I want to inform you that I have instructed my bankcommission (sic) BIKUBEN to transfer an amount of Usdoll (sic) 200.000,to you to a custodial account for Rhodes Management, Inc. as specified in appendix to this letter.
Transferring of the amount of Usdoll 200,000,will probably take place today through the correspondent bank in USA of BIKUBEN.
I want to state that the transfer of the amount to you takes place under the conditions as follows of the appendix to this letter. This means that the amount only can be taken in the usual custodial account of the purpose descripted (sic) in the appendix.
The conditions are negotiable with representative of Phoenix Trust and are confirmed by the trust.
I presume therefore that the operation by you can take place without difficulties and I am looking forward to receive your confirmation of this fax and your statement of having received the amount on the custodial account as soon as the operation is concluded.
The appendix to the fax, which was sent to FNBC's Veterans Boulevard Branch, provided in relevant part[2]:
US Dollars 200,000,00 is hereby transferred on behalf of EVB Eurovest Benelux, Baronielaan 99, 4818 PC represented by mr. (sic) Poul Holmgard, Ryesgade 9, 8000 Arhus C. Denmark to account number XXX-XXXXXX for Rhodes Management, Inc., Bank Routing ABA XXXXXXXXX, First National Bank of Commerce, 3783 Veteran Memorial Bvld., (sic) Metairie, LA 70002, United States of America.
It shall be stated that the amount is exclusively for the said bank to be received and taken into account for Rhodes Management Inc. as a custodial account.
The aforementioned funds are to be employed exclusively to capitalise (sic) a debenture trading account identified by Phoenix Trust as Trading Account No. 33.28.1060 and shall not be utilised (sic) for any other purpose whatsoever.
The funds are to remain in the nominated custodial account for sole application within Trading Account Nr. 33.28.1060.
At the cessation of trading, or upon 30 (Thirty) days notice in writing by either party hereto, whichever is the sooner being the operative date, the said funds being kept in the Custodial Account shall be returned to EVB Eurovest Benelux represented by mr. Poul Holmgard, Ryesgade 9, 8000 Arhus C by bank telegraphic transfer to the above-mentioned Bikuben, Arhus-Department. Phoenix Trust reserves the right to cease trading at its sole discretion and in such an event the aforementioned provision for return of funds retained in the Custodial Account shall apply....
We do not find that this language created any fiduciary duty on the part of FNBC, particularly in light of the mandate of La. R.S. 6:1124.
La. R.S. 6:1124 provides in relevant part:
§ 1124. No implied fiduciary obligations
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof .... (emphasis added)
The language in the fax can only be read to require FNBC to deposit the wired money to the account of Rhodes Management. The mere fact that Holmgard notified FNBC of the terms to be met by Rhodes Management, *588 Inc., a third party, did not make those terms binding on FNBC. The language in the fax concerning the use of the money by Rhodes could only have been included in the fax to FNBC for informational purposes. It is undisputed that FNBC did not sign an agreement with Holmgard agreeing to monitor the manner in which the funds in the "custodial account" were spent. FNBC was not a party to the investment agreement between Rhodes and Holmgard detailing how the money was to be used, nor did Holmgard have an existing account with FNBC. Only Rhodes had an account with FNBC. By arguing that FNBC is responsible for Rhodes' taking the money out and expending it in a manner contrary to the agreement, Holmgard seeks to hold FNBC responsible for the allegedly wrongful act of a third party over which FNBC had no lawful authority. Indeed, a third party who was a customer of the bank and to whose's account FNBC, pursuant to La. R.S. 6:317, was obligated to pay funds into. This argument fails in light of the clear mandate of La. R.S. 6:1124.
Pursuant to La. R.S. 6:1124, no fiduciary responsibilities exist toward customers or third parties, unless expressly set forth in a written agency or trust agreement. Bespress, Inc. v. Capital Bank of Delhi, 616 So.2d 795 (La.App. 2 Cir.1993). The argument that Holmgard could unilaterally impose such a duty on FNBC by simply placing the terms of the agreement between it and Rhodes in a fax to FNBC along with the wire transfer of money borders on frivolity. More than simply placing the money in Rhodes' account per the fax is needed to create a fiduciary duty on the part of FNBC. FNBC did not expressly agree to act as an agent for Holmgard. Consequently, we do not find that FNBC breached any alleged fiduciary duty to Holmgard.
Alternatively, if a depositary agreement existed, the depositary agreement was between FNBC and Rhodes. The mere fact that a customer pays money into a bank does not necessarily create the depositor-bank relationship between the customer and the bank. It is quite common for one party to pay money into a bank to the credit of another. Banking Law at § 9.04, Page 9-16, Schlichting, Rice & Cooper (Matthew Bender 1992). Holmgard sent the money with instructions to deposit the funds to the account of Rhodes Management. The mere fact that Holmgard sent a wire transfer of money instructing that the money be placed in the account of Rhodes did not create a depositor-bank relationship between Holmgard and FNBC.
This case is distinguishable from City Bank, in that in City Bank, the money was deposited to the wrong account, whereas in the instant case, the money was deposited to the account of the party directed by Holmgard. The fact that the party then apparently spent the money in a manner inconsistent with its agreement with Holmgard does not cause imposition of a fiduciary duty upon FNBC. Rather, once FNBC fulfilled the directive to deposit the money to Rhodes' account, FNBC fulfilled its duties to its depositor, Rhodes and to Holmgard.
Assuming that all the factual allegations contained in the petition are true, Holmgard cannot recover from FNBC since no contract or express written agreement exists between Holmgard and FNBC which imposes fiduciary duties upon FNBC or which would allow FNBC to prevent Rhodes from withdrawing funds from its account. Assuming that the allegations contained in Holmgard's petition are correct, it is obvious that Rhodes, not FNBC would be the party responsible for any damages suffered by Holmgard as a result of the failure to spend the money deposited in the manner agreed upon by those parties.
In the next assignment of error, Holmgard argues the trial court erred by granting FNBC's exception of prescription.
The issue of when an action alleging a violation of a fiduciary duty against a financial institution must be filed is addressed in La. R.S. 6:1124, which states, in relevant part:
... Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party. (emphasis added)
*589 Assuming arguendo that plaintiff had a claim for breach of a fiduciary duty, plaintiff would have had to file his action within one year of its occurrence. The incident forming the basis for plaintiff's claim occurred sometime between October, 1992, the date the funds were wired, along with the facsimile transmission and March, 1992, the time period during which Holmgard was unquestionably aware of the fact that Rhodes Management had transferred the money to another bank.[3] Yet, Holmgard did not file the petition for damages until October 11, 1995. The claim had clearly prescribed pursuant to the terms of La. R.S. 6:1124.
In the final assignment of error, Holmgard argues the trial court erred in not granting its motion for partial summary judgment on the issue of liability. Having determined that FNBC did not have any fiduciary duty to Holmgard and alternatively, that such action had prescribed at the time this litigation commenced, this Court finds that no reason existed for addressing Holmgard's motion for partial summary judgment. Moreover, based on the principals enunciated herein, the motion for partial summary judgment has no merit.
The judgment of the trial court dismissing Holmgard's claims is affirmed.
AFFIRMED.
NOTES
[1] While the actual wire transmission was apparently received at FNBC's main branch in New Orleans, LA on October 26, 1996, the appendix had apparently already been sent to FNBC's branch office in Metairie, LA on October 23, 1996.
[2] For some unexplained reason this fax had been sent three days prior to the wire transfer to FNBC's main office.
[3] Attached to Holmgard's petition for damages as an exhibit was a letter dated March 16, 1993 from Poul Holmgard to First National Bank of Commerce. In that letter, Mr. Holmgard specifically acknowledged that he was aware of the fact that Rhodes had transferred the money out of the account.