J^KUHN, J.
In this appeal, plaintiff, the Estate of Maxine M. Bass (“the estate”), through its administrators, Kevin Hall and Angela Hall Jones, claim that defendant, Whitney National Bank, formerly First National Bank of Houma (collectively referred to as “the bank”)[2], acted negligently by failing to transfer assets of the estate into the Maxine Marie Bass Irrevocable Trust (“the trust”).[3] The trust was created on April 10, 1997, naming the bank as trustee and Bass as the income and principal beneficiary of the trust. Although Bass’s estate consisted of assets valued in excess of $1,500,000.00, only $100.00 was transferred into the trust prior to Bass’s death on June 10, 1997. The bank answered the suit, asserting it acted reasonably with respect to the trust property. The bank filed a motion for summary judgment and an exception of prescription. By judgment dated March 2, 1999, the trial court granted the motion for summary judgment and maintained the exception, dismissing the allegations of the petition against the *231 bank.[4] We affirm the trial court’s judgment dismissing plaintiffs claims against the bank because we determine the trial court correctly granted the motion for summary judgment. We pretermit the issue of prescription.
I. FACTS AND PROCEDURAL BACKGROUND
During August of 1996, Maxine Bass executed a power of attorney naming Rachel L. Stevens, a housekeeper who took care of Bass, as her agent. On March 4, 1997, Stevens contacted L. Jeffries Laque, III, an attorney, requesting that a trust be created to protect Bass’s assets. In his deposition testimony, Laque explained that Stevens represented that Bass had considerable physical problems and that Bass had good and bad |3days with respect to her mental competency. According to La-que, Stevens produced a copy of the power of attorney executed by Bass. Laque met with Bass in her home to confirm that she intended to have the trust set up as represented by Stevens. Laque also communicated with one of Bass’s doctors, Dr. Manish Dhawan, regarding Bass’s competency. Convinced that Bass was competent, La-que proceeded to draft the trust instrument. Stevens was to be the settlor of the trust, acting on Bass’s behalf pursuant to the power of attorney.
On March 17, 1997, John B. Hall and Kevin Hall, relatives of Bass, filed suit naming Stevens as defendant. The Hall suit sought injunctive relief prohibiting Stevens from exercising the power of attorney and urged that Bass was incapable of handling her own affairs. In early April of 1997, Laque contacted Melvin Camp, Jr., who at that time was a senior vice-president and trust officer for the bank. According to Camp’s deposition testimony, Laque explained to Camp that Bass was an elderly lady with substantial assets, that Stevens took care of her, and that several distant relatives were trying to get their hands on Bass’s money. Laque advised that he, Bass and Stevens felt it was in Bass’s best interest to have an independent trustee manage her assets. Laque also informed Camp that Bass’s relatives had filed suit seeking to enjoin Stevens’s, exercise of the power of attorney.
On behalf of the bank, Camp decided that substantial assets of Bass’s estate should not be transferred into the trust prior to obtaining the court’s ruling in the Hall injunction suit. Camp explained that since Bass’s relatives were challenging Stevens’s authority to act pursuant to the power of attorney, he perceived that the trust document would be “of no value” if the court’s ruling was adverse to Stevens. Camp did not want the bank, as trustee, to take possession of Bass’s assets until he knew whether the court would recognize the trust. Camp suggested that the trust instrument be drafted using language Lproviding for the trust to consist of the property described in schedule “A.” Schedule A contained only one asset, a check for the amount of one hundred dollars ($100.00) drawn on one of Mrs. Bass’s checking accounts.[5] The trust instrument further provided that “[t]he trust property shall consist of ... such other assets as may be added by Settlor [Stevens] or by third persons, including but not limited to the assets described in schedule “B.” Schedule B set forth a list of immovable and movable property owned by Bass, which represented the remainder of her estate. Camp presented the bank’s conditions regarding the creation of the trust to Laque. Laque testified that he, Bass, and Stevens jointly agreed to execute the trust instrument as proposed by Camp. Camp testified that the bank would not have *232 acted as trastee if they had objected to the plan to delay the transfer of the assets.
On April 10, 1997, Stevens, acting as Bass’s mandatary, signed the trust instrument as settlor of the trust, Camp signed an act of acceptance by trustee on behalf of the bank, and Bass signed an affidavit affirming the trust. Both Camp and La-que testified they were aware that Stevens would have access to Bass’s funds that were not placed in the trust. Laque testified that Bass was very involved with the decisions regarding the trust and that Bass had intimated she wanted Stevens to have access to her funds. Laque explained he had no reason to suspect any chicanery on Stevens’s part. Camp testified that although he was aware that Stevens had access to Bass’s checking account, he had no knowledge of any misuse by Stevens of any of Bass’s funds.
On April 11, 1997, a hearing was held in the Hall injunction suit, and the trial court took the matter under advisement. A judgment was signed on June 6, 1997, finding that the plaintiffs’ petition was moot and granting Stevens’s exceptions of no right of action and no cause of action. The judgment further provided that plaintiffs were allowed [sten days to amend their petition to allege a cause of action. A notice of judgment was mailed to the parties on June 9, 1997. Bass died on June 10,1997. According to the provisions of the trust instrument, the trust terminated upon Bass’s death. None of the Schedule B assets were transferred into the trust prior to Bass’s death. On June 10, 1998, the estate filed this suit alleging that Stevens misappropriated sums in excess of $200,000.00 between October of 1995 and June of 1997. The estate alleges that of this total sum, $30,000.00 was dispersed by Stevens between April 10, 1997, the date the trust was created, and June 10, 1997, the date of Bass’s death. The estate asserts that the bank was negligent in failing to take the steps necessary to transfer Bass’s funds into the trust, and that since the bulk of Bass’s estate remained under Stevens’s control after the trust was created during April of 1997, Stevens was able to continue misappropriating money until Bass died.
At the hearing on the bank’s motion for summary judgment, the trial court determined that the deposition testimony of Camp and Laque established that the bank was not willing to serve as trustee for the Schedule B assets until the Hall suit challenging Stevens capacity to act on Bass’s behalf was resolved. The court found there was no impropriety in the bank’s action of accepting only a portion of the assets until the Hall suit was resolved. The court noted that the reason the bank was cautious about taking further action was due to the actions of Bass’s relatives contesting Stevens’s ability to act on Bass’s behalf. The court determined that the provisions of Louisiana’s Trust Code, La. R.S. 9:1721 et seq., did not impose a duty on the bank to do anything other than what it had agreed to do, which was to accept the $100.00 check in order to establish the trust. The court acknowledged that Camp and Laque planned that the Schedule B assets would be accepted into the trust when the court recognized Stevens’s authority to act on Bass’s behalf. The court determined that the bank owed no duty to Bass other than to manage |Bthe $100.00 which had been made part of the trust. Based on these reasons, the trial court signed a written judgment dismissing plaintiffs claims against the bank. The estate has appealed urging the court erred: 1) in granting the motion for summary judgment because there were issues regarding whether the action or inaction of the bank and its officer caused the estate to lose $28,000.00 between April 11, 1999, and June 10, 1999, and 2) in concluding that no duty to the estate was breached when the bank failed to transfer funds into the trust or otherwise protect the funds upon finding that no taxable event would have occurred if the transfer was made properly.
*233 II. ANALYSIS
Appellate courts review summary judgments de novo under the same criteria that governs the trial judge’s consideration of whether a summary judgment is appropriate. Terrebonne v. Floyd, 99-1036 (La. App. 1st Cir.5/23/00), 767 So.2d 754. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). This article was amended in 1996 to provide that “summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action .... The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2).
A violation by a trustee of a duty he owes to a beneficiary as trustee is a breach of trust. La. R.S. 9:2081 A trustee shall administer the trust solely in the interest of the beneficiary. La. R.S. 9:2082 A trustee in administering a trust shall exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property. La. R.S. 9:2090 A trustee is under a duty to a beneficiary to take reasonable steps to take, keep control of, and preserve the trust property. La. R.S. 9:2091
|7La. R.S. 6:1124 also provides in relevant part:
§ 1124. No implied fiduciary obligations
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof.
The estate asserts that the bank, as trustee, breached the duty it owed to Bass by failing to place all of her assets into the trust when it was first formed. The estate contends the trustee knew Bass’s competency was being questioned and knew soon after the April 11, 1997 hearing that there would be no adverse tax consequences to transferring the assets to an IRA trust. Appellant asserts that a genuine issue of fact exists regarding whether the trustee has violated a duty.
We disagree. Our review of the record reveals no genuine issues of material fact. The record establishes the facts are largely undisputed, and the estate did not present evidence to controvert the facts as presented in the deposition testimony of Camp and Laque. The parties actually dispute whether the actions of the trustee bank constitute a breach of duty based on the applicable provisions of the trust code.
The record establishes that only $100.00 of Bass’s funds was ever transferred into the trust. The funds which were allegedly misappropriated by Stevens never formed a part of the trust. The bank’s duty under the provisions of the trust code was solely to protect and preserve the assets actually in the trust, the $100.00. No allegations have been made that this $100.00 was not protected by the bank.
|sWe agree with appellee’s contention that the estate cannot unilaterally impose a duty on the bank to accept and administer assets contrary to the bank’s agreement. See Holmgard v. First National Bank of Commerce, 96-0853, pp. 7-8 (La. App. 4th Cir.1/15/97), 687 So.2d 583, 587-588. The bank had no duty to preserve and safeguard Bass’s assets which had not been made a part of the trust. The mere fact that the bank agreed to serve as trustee for a trust created for the benefit of *234 Maxine Bass did not impose on the bank a duty to be generally responsible for the preservation of Bass’s entire estate. According to the terms of the trust instrument, the bank agreed only to accept $100.00 as the initial trust asset. The record establishes that other than the trustee/beneficiary relationship that arose from the formation of the trust, Bass had no other customer or business relationship with the bank.[6]
Because Bass’s relatives were challenging Bass’s competency and Stevens’s authority to act under the power of attorney, the bank knew that any action it took on Bass’s or Steven’s behalf might be declared invalid. We find that the bank’s decision to await a ruling in the Hall suit before transferring substantial assets into the trust, with which Laque, Bass and Stevens apparently concurred, was a reasonable one. Regardless of whether or not adverse tax consequences would have resulted from the transfer of Bass’s funds to the trust, the bank did not act unreasonably in deferring this action since the court’s ruling in the Hall suit might have affected the validity of the trust. Accordingly, we conclude that the trial court properly granted the bank’s motion for summary judgment.
| <,111. CONCLUSION
For the above reasons, we affirm the judgment of the trial court dismissing the claims of the Estate of Maxine Bass against Whitney National Bank. Appeal costs are to be paid by plaintiff-appellant.
AFFIRMED.

. During August of 1997, First National Bank of Houma (“FNB”) merged into Whitney National Bank ("WNB”) with WNB being the surviving institution. All of plaintiff's allegations regarding WNB's negligence or misconduct pertain to the conduct of FNB prior to the merger.

.The estate also asserted claims against several other defendants, who are not involved in this appeal.

. The judgment was designated as a final judgment.

. According to his deposition testimony, Camp held the $100.00 check with the trust instrument while the Hall suit was pending. When he received word that Bass had died, he marked the check as "void.”

. The record contains an affidavit of Jeanne Dutrach, a banking officer employed by WNB, which states she has searched the bank records and has found no evidence that Bass had any customer relationship with WNB or FNB other than the relationship arising under the trust instrument executed on April 10, 1997.