TERRI F. LOVE, Judge.
| plaintiff, Pamela Casey (“Mrs. Casey”), appeals the decision of the trial court denying a Writ of Mandamus that would have forced the Orleans Parish Tax Assessor to correct a tax assessment applied to Mrs. Casey’s immovable property.

FACTS AND PROCEDURAL HISTORY

Mrs. Pamela Casey owns immovable property located at 1545 Camp Street, New Orleans, Louisiana. Mrs. Casey was a participant in the Restoration Tax Abatement (“RTA”) program authorized by the 1974 Constitution, art. VII, § 21(H) and La. R.S. 47:4311. The State Constitution, art. VII, § 21, Other Property Exemptions, provides:
(H) Notwithstanding any contrary provision of this constitution, the State Board of Commerce and Industry or its successor, with the approval of the governor and the local governing authority and in accordance with procedures and conditions provided by law, may enter into contracts granting to a property owner, who proposes the expansion, restoration, improvement, or development of an existing structure or structures in a downtown, historic, or economic development district established by a local governing authority or in accordance with law, the right for an initial term of five years after completion of the work to pay ad valorem taxes based upon the assessed valuation of the property for the year prior to the commencement of the expansion, restoration, 12improvement, or development. Contracts may be renewed, subject to the same conditions, for an additional five *745 years extending such right for a total of ten years from completion of the work.
Louisiana Revised Statutes 47:4311 provides in pertinent part:
It is recognized as essential to the continued growth and development of the state and to the continued prosperity and welfare of the people of the state that the expansion, restoration, improvement, and development of existing commercial structures in downtown, historic, and economic development districts be encouraged in order to provide for the development and improvement of local communities, the fullest use of underutilized resources, and the enhancement of the tax base. For these reasons the legislature proposed and the people of Louisiana adopted Article VII, Section 21(H) of the Constitution of Louisiana to provide a means by which owners of such properties who expand, restore, improve, or develop them may pay ad valo-rem taxes for five years based upon the assessed value of the property for the year prior to the commencement of the expansion, restoration, improvement, or development. It is the purpose of this Chapter to provide the procedures and conditions for the granting of contracts for such purpose by the State Board of Commerce and Industry in accordance with the provisions of the Louisiana Constitution.
Participation in the RTA program is made through an initial application on a local level to the Local Governing Authority (“LGA”) and grants to the renovating property owner the right to pay taxes on the property based on the pre-renovated assessed value as determined by the RTA contract. There is an option for an additional five years of tax abatement subsequent to the initial five-year period upon re-application and approval. In Orleans Parish, the LGA is the New Orleans City Council. After approval of the application by the LGA, the Board of Commerce and Industry, as well as the Governor, must also approve and issue the contract to the applicant. Once signed by all parties, the contract is a binding one between the State of Louisiana and the applicant-homeowner.
Mrs. Casey owns the immovable property at 1545 Camp Street, for which she applied to the RTA in 1992 prior to renovating the property. The RTA 13Contract No. 91-04-0217 was signed in May 1992 and granted appellant the right to pay ad valorem taxes based upon the assessment prior to her renovation of the property for a period of five years: 1992,- 1993, 1994, 1995, and 1996. The pre-renovation assessment was $6,000.00.
By correspondence dated January 17, 1996, the program administrator of the State Department of Economic Development, Financial Incentives Division, informed Mrs. Casey about the renewal option and stated:
In order to be eligible for renewal of an existing RTA contract the PCR and AFC, contract addendum documents must have been filed for the original contract; taxes cannot have been paid on the improvements pursuant to R.S. 47:4315(A)(4); and a renewal application form must be submitted with the $50 renewal fee.
The correspondence states that Contract No. 91-04-0217 expires July 31, 1996 and lists the steps the property owner must take to seek renewal. Step 2 required the submission of four notarized certification forms, including the applicant’s sworn statement that “taxes have not been paid on improvements exempted under Contract Number 9-04-0217, for the 1545 Camp Street Project,.... ” The renewal correspondence was copied to the Orleans 1st Municipal District Assessor.
*746 Mrs. Casey applied for the renewal of the RTA contract and, as per the RTA’s instructions, did not pay taxes on the improvements during the time she waited for the renewal contract to be approved. Unfortunately, the LGA for Orleans Parish, the City Council, did not approve Mrs. Casey’s renewal application until March 1998, almost two years from the date of her application. The Louisiana Board of Commerce and Industry and the Governor signed the contract, and it specifies that:
From the effective date of the initial contract, number 91-01,-0217, and for a period not to exceed an additional five (5) years, the State of Louisiana does by these presents, give and grant unto Con-tractee the right to pay ad \Avalorem taxes based upon the assessed valuation of the property for the year prior to the commencement of the expansion, restoration, improvement, or development. In no case shall this limited exemption be granted for more than a total of ten tax assessment years....
Although Mrs. Casey received the renewal of her RTA contract for the , tax years 1997, 1998, 1999, 2000, and 2001, the Tax Assessor, Patricia Johnson, meanwhile increased the assessment of the subject property from $6,000.00 to $52,500.00 for the years 1997, 1998, and 1999. Appellant failed to pay the taxes and also failed to file a written complaint seeking review of the allegedly incorrect assessment as required by La. R.S. 47:2110(D):
As assessment valuation shall be challenged first by appeal to the Board of Review as provided by La. R.S. 47:1992, then by appeal to the Louisiana Tax Commission as provided in La. R.S. 47:1989, and finally by judicial review as provided in La. R.S. 47:1998.
Appellant asserts that the tax assessor opposed her renewal application and added to the lengthy delay for its approval. Following the approval of the renewal contract, appellant made amicable requests to the assessor to comply with the assessed values for the Camp Street property under the RTA renewal contract rather than enforce the tax bill of approximately $40,000.00 based on the increased assessment valuation. Additionally, Mrs. Casey attempted to pay her taxes at the RTA assessment rate, but the assessor would not accept payment at that rate.
In June 2000, appellant filed a Writ of Mandamus to have the assessor process the change in assessment valuations for the relevant tax years and for the Department of Finance to accept her tax payments based on the former assessed value of $6,000.00. After exceptions were filed, the trial court ultimately denied the writ based upon its finding that Mrs. Casey did not follow the guidelines for appealing an adverse assessment to the Board of Review.

DISCUSSION

The assessor filed exceptions of prematurity and prescription, arguing inter alia, that the Constitution and statutes require a taxpayer challenging an assessment to first exhaust her administrative remedies and, because Mrs. Casey failed to do so, the suit is premature. Secondly, the assessor argued that Mrs. Casey’s time for initiating the prescribed administrative review had passed; thus, any challenge to the tax assessment had prescribed.
Citing Westminster Management Corp. v. Mitchell, 525 So.2d 1171 (La.App. 4th Cir.5/13/88), the assessor asserted that a taxpayer’s suit to change a tax assessment can be simultaneously premature and prescribed. This Court held all of the taxpayers’ actions prescribed in Westminster because some failed to seek administrative review and some others failed to seek timely judicial review.
*747 Additionally, the assessor argues that the writ of mandamus is not the proper procedural vehicle for enforcing a contract, but is only to be used when no other remedies in law are available and only to compel the performance of ministerial duties imposed by law.
Appellant argues, however, that the instant case is not a situation where the tax assessor made an error in calculation or simply overvalued the property; hence, the administrative remedies suggested by the assessor are inapplicable. Rather, appellant asserts that in this case the assessor knew that Mrs. Casey was in the process of seeking renewal of the RTA contract, and even opposed the renewal. Although the valuation of the property entered by the assessor may well be correct, appellant’s position is that the contract between her and the State, grants her the right to pay ad valorem taxes based upon the 1991 assessed value of the property i.e., the pre-renovation valuation. The contract, appellant argues, requires the assessor, an elected State official, to honor and uphold all contracts entered into by 1 fithe State with individuals pursuant to the constitutional and statutory provisions for economic incentives (through time-limited tax abatement) for the renovation of qualified properties in the State.
Furthermore, appellant argues that the assessor is required to enforce the contract between herself and the State; i.e., such enforcement is a ministerial function and is her official duty in State employment. Thus, appellant asserts, the remedy for an official’s failure to perform a ministerial duty is not an administrative hearing on the “value” of the property. Rather, the value of the property is fixed by the RTA contract and the writ of mandamus is the proper procedural vehicle to enforce the tax assessor to abide by the terms of the State contract.
The assessor’s argument and the district court’s decision would have the taxpayer shoulder the burden for the delay in approving her application for renewal of the RTA contract. Such a result is unfair, especially in light of the RTA program’s goals that seek to reward property owners for renovating and improving certain properties that hold historic value in the State, but which are sorely in need of improvement. The public policy underlying such a program is highly desirable as it encourages private property owners to invest money in improving historically significant property in the State. Surely such an economic incentive would be undermined if the taxpayer has to bear the financial burden of litigating an increased valuation that results in a huge tax bill during the pendency of their application period for renewal every time the renewal process takes longer than expected. Such a result would be especially onerous in the instant situation where the assessor had actual knowledge that the taxpayer was in the process of obtaining a renewal contract. The correspondence informing Mrs. Casey that she could apply for such a renewal of the tax abatement program for an additional five years |7was sent to the tax assessor, who apparently was involved to some extent in the renewal process with the City Council. It would seem that given the RTA program’s goals for economic development in the State, the assessor would have worked more closely with Mrs. Casey, rather than in the punitive manner as the record suggests; the taxes, penalties and interest equal over $40,000.00.
The assessor argues that a taxpayer must seek administrative review when challenging an assessment or tax bill. In this case, however, the administrative review procedure was not relevant because *748 Mrs. Casey presumed that she1 would be granted the extension on her contract with the State. She had been approached by the State Department handling this incentive program and had been informed that she could obtain an extension of the tax abatement period for an additional five years by following the steps outlined in the January 17, 1996 letter that was forwarded to the assessor.
Mrs. Casey had no need to challenge the tax bill because the State had already instructed her not to pay the taxes at the improved valuation or she would not be eligible for the contract renewal. It would seem reasonable that the taxpayer would rely upon the State’s communications with her, especially since these same communications were forwarded to the assessor. To hold otherwise would frustrate the goals of the RTA program, as well as the statutory and constitutional provisions that attempt to encourage economic growth and development of historic properties in this State.
For the foregoing reasons, we reverse the judgment of the district court and find that the writ of mandamus was properly filed under these circumstances. Therefore, because a remand would serve no purpose other than to further delay this matter, we hereby issue the requested writ of mandamus to the tax assessor and the City of New Orleans commanding their performance as to Mrs. Casey’s 1545 [ sCamp Street property in accordance with this opinion and the Restoration Tax Abatement Contract and Renewal 91-04-0217.
REVERSED; WRIT OF MANDAMUS GRANTED.