JjTERRI F. LOVE, Judge.
Plaintiff filed suit against the City and the Assessor to recover taxes paid under protest, asserting the tax assessor erroneously re-assessed the property for the years 2000 and 2001 in violation of the terms of the Restoration Tax Abatement Contract. The Assessor filed an exception of no right of action and the City filed exceptions of prescription and no cause of action. The trial court maintained the City’s exception of prescription and dismissed the lawsuit with prejudice without addressing the remaining exceptions. For the following reasons we affirm the judgment of the trial court.

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

Lindy Development, L.L.C. (“Lindy”) owns immovable property located at 4125 *254 St. Charles Avenue, New Orleans, Louisiana that is subject to ad valorem taxes. Lindy purchased the aforementioned property from Clark O’Hara, L.L.C. (“Clark”) on October 8, 2001. At the time of purchase, the property was subject to an October 25, 2000 Contract for Limited Exemption from Ad Valorem Taxation (Pursuant to Article VII, Section 21(H) of the Louisiana Constitution of 197k and La. R.S. k7:kSll~kS19) (“RTA Contract”). The RTA Contract was between Clark and the City.
12Pursuant to the terms of the RTA Contract, ad valorem taxes on qualifying projects with' approved abatement contracts are to be paid “based upon the assessed valuation of the property for the year prior to the commencement of the expansion, restoration, improvement, or development.” La. R.S. 47:4313(A)(1). If taxes are paid on the improved value of the property, the contract is void. In the year 1999, ad valorem taxes for the aforementioned property was $7,600.00. The Sixth District Assessor, Janyce Degan, re-assessed the property for the years 2000 and 2001 raising the taxes to over $11,000.00. According to Lindy, he informed the Assessor of the “error” and requested it be corrected, but she refused.
On November 30, 2001, Lindy paid the ad valorem taxes on the property for 2000 and 2001 under protest to avoid a tax sale of the Property for nonpayment of the 2000 ad valorem taxes. Lindy filed suit on December 28, 2001, alleging the Assessor re-assessed the property for the years 2000 and 2001 in violation of the RTA Contract. The named defendants were Assessor Janyce Degan, and the Bureau of the Treasury of the City of New Orleans’ Department of Finance (the “City”).
On the same day suit was filed, Lindy requested by letter that the Louisiana Board of Commerce and Industry (“The Board”) send him information regarding the procedure for transferring the RTA Contract to the new owner. Approximately six months later on June 27, 2002, the Board sent the incorrect form required for the transfer. The Board was notified via fax on July 2, 2002 of the mistake. The Board sent the correct form on July 8, 2002 by U.S. mail instructing Lindy to complete and return five original copies. Lindy completed the RTA transfer contract and mailed the forms to the Board on September 17, 2002. On March 10, 2003, the Governor approved the transfer of the RTA Contract.
[¡¡The trial court entered preliminary defaults against the Assessor and the City on February 5, 2002. Subsequently, both defendants answered and obtained extensions of time within which to respond to the petition. The Assessor filed an exception of no right of action. The City filed exceptions of prescription and no cause of action. The exceptions were heard on November 22, 2002 and the trial court maintained the City’s exception of prescription dismissing the lawsuit with prejudice. Lindy filed this devolutive appeal asserting two assignments of error.

Standard of Review

Appellate review of peremptory exceptions involves the determination of whether the district court was legally correct or incorrect. Peneguy v. Porteous, 2001-1503, p. 6 (La.App. 4 Cir. 5/15/02) 823 So.2d 380, 384, writ denied, 2002-2388 (La.11/27/02), 831 So.2d 287, quoting Landry v. Blaise, Inc., 99-2617, p. 4 (La.App. 4 Cir. 8/2/00), 774 So.2d 187, 190. This Court must give due deference to factual finding of the district court, but the issues presented in this appeal are legal in nature; thus, the analysis must concern the legal grounds for the district court’s judgment. Id.

*255
FIRST ASSIGNMENT OF ERROR

Lindy argues the trial court erred by maintaining the City’s exception of prescription dismissing the lawsuit. Specifically, the plaintiff claims (1) the trial court based its ruling on a decision of the Louisiana Supreme Court later set aside on rehearing; (2) the relevant statutes do not expressly mandate that the taxes paid under protest be paid during the tax year for which they were due; (3) the trial court’s interpretation of the relevant statute would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and (4) the trial | ¿court’s interpretation of the statute would require the taxpayer to breach its contract with the state granting the taxpayer a limited tax exemption.

Trial Court based ruling on an erroneous decision

The assignments urged by the plaintiff are the same urged by the plaintiff in Comm-Care Corp. v. Bishop, 96-1711 (La.7/1/97) 696 So.2d 969, hereinafter “Comm-Care I”. Lindy argues Comm-Care I should not be followed because it was later set aside on rehearing and resolved on an unrelated issue. The defendants disagree stating the Supreme Court did not find error in the legal reasoning of Comm-Care I and the case can still be considered persuasive.
The Supreme Court granted a rehearing in Comm-Care I, designated as Comm-Care II. Comm-Care Corp. v. Bishop, 96-1711 (La.1/21/98) 706 So.2d 425. In Comm-Care II the Supreme Court stated, “[Without finding that our original opinion was in error, we set aside the reasoning and holding of the opinion as having improvidently considered the prescription issue.” Comm-Care II, 1996-1711, p. 1, 706 So.2d at 426. It is dispositive whether the trial court relied on Comm-Care I. As stated earlier, we must give deference to fact found by the trial court, but the issues on appeal are legal in nature. The reasoning of the trial court has no bearing on the issues before this court.

Relevant statutes do not mandate timely payment to protest

Lindy argues the relevant statutes do not expressly mandate that taxes paid under protest be paid during the tax year for which they are due. The City maintains the statutes should be read in para mate-ria concluding taxes paid under protest should be done timely during the tax year they are due.
“[T]he task of statutory construction begins with an examination of the language of the statute itself ... When the law is clear and unambiguous and its ^application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature.” La. C.C. art. 9. State v. Barbier, 98-2923, p. 3 (La.9/8/99), 743 So.2d 1236, 1238. This principle applies to tax statutes. Tarver v. E.I. Du Pont De Nemours and Co., 93-1005, p. 3 (La.3/24/94), 634 So.2d 356, 358.
Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13. The Louisiana Supreme Court has followed the logic of collectively interpreting statutes that deal with the same subject. First Nat. Bank v. City of New Orleans, 555 So.2d 1345 (La.1990). A statutory provision should be construed with the remaining portions of the statute, but more importantly, all statutes on the same subject matter should be read together and interpreted as a whole. Id., Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980).
The case at bar requires us to analyze the statutes regarding ad valorem taxes and when a taxpayer can pay under pro *256 test. The Louisiana Constitution authorizes the collection of ad valorem taxes in the state. La. Const. Art. VII, § 18. La. R.S. 47:1997 discusses when ad valorem taxes become delinquent in Orleans Parish and its consequences.[1] La. R.S. 47:1997(B) states in pertinent part:
| (¡The collection of taxes shall begin on the first day of January of the year 1972, and for each year thereafter, for which such taxes are levied. Beginning with the year 1972, the entire amount of such taxes shall become delinquent on the first day of February and said taxes shall bear ten percent per annum delinquent penalty from the date of delinquency until paid. On the thirty-first day of December of each year, commencing with December 31, 1972, the director of finance of the city of New Orleans, under such regulations as may be prescribed by the city council, shall forthwith proceed to advertise and sell for. delinquent taxes the real estate and public utilities upon which taxes are delinquent and shall also proceed to enforce the collection of delinquent personal property taxes, (emphasis added)
LSA R.S. 47:1997(B). In Orleans Parish, ad valorem taxes are assessed the year *257 prior to the taxing year. The taxes are collected beginning January 1st of the taxing year and become delinquent on February 1st of the taxing year. If taxes are not paid by December 31st of the taxing year, the property shall proceed to a tax sale,
La. R.S. 47:2110 discusses how to pay taxes under protest.[2] It states in pertinent part:
*258 |7Any person resisting the payment of any amount of tax due shall pay the amount due to the officer designated by law for the collection of such tax
and shall give him, the parish or district assessor, and the Louisiana Tax Commission written notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If a suit is timely filed contesting the correctness of the assessment pursuant to R.S. 47:1998 and seeking the recovery of the tax, then that portion of the taxes paid that are in dispute shall be deemed as paid under protest and such amount shall be segregated and shall be' further held pending the outcome of the suit. That portion of the taxes paid by the taxpayer to the officer which is neither in dispute nor the subject of a suit | scontesting the correctness pursuant to R.S. 47:1998, shall not be made subject to the protest, (emphasis added)
LSA R.S. 47:2110.
Under La. R.S. 47:2110, if a taxpayer resists payment of any amount of tax, then they may pay under protest. To pay under protest, the taxpayer must pay the amount due to the designated officer with a written notice of his intention to file suit for the recovery of taxes paid. At that time, the portion that is in dispute will be segregated. If the taxpayer files suit timely, the portion in dispute shall be further held pending the outcome of the suit. If a taxpayer fails to file suit timely, the disputed portion will be returned to the general fund.
Because a statutory provision should be construed along with the remainder of the statute, and all statutes on the same subject matter should be read together and interpreted as a whole, we find La. R.S. 47:2110 and La. R.S. 47:1997 should be read pari materia. As noted in Capital Drilling, the statutes cited herein are both located in Title 47 of the Louisiana Revised Statutes pertaining to Revenue and Taxation. They are located in Subtitle III discussing Provisions Relating to Ad Valo-rem Taxes. Capital Drilling Co. v. Graves, 496 So.2d 487, 491 (La.App. 1st Cir.1986). These provisions do not indicate that a taxpayer should be allowed the right to litigate a delinquent tax by payment under protest. Id. We have adopted the same view in Capital Drilling holding only the timely payment of the contested tax preserves the right to litigate the validity of the tax in court. Affordable Housing Developers, Inc. v. Kahn, 2000-0611, p. 4 (La.App. 4 Cir. 4/25/01), 785 So.2d 251, 253, writ granted, 2001-1951 (La.11/2/01), 800 So.2d 861, rev’d on other grounds, Fransen v. City of New Orleans, 2002-2384 (La.App. 4 Cir. 11/19/03), 862 So.2d 142. See also, Louisiana Employers-Managed Ins.Co. v. Litchfield, 2001-0123 (La.App. 1 Cir. 12/28/01), 805 So.2d 386.
 IflAd valorem taxes are payable in full on or before February 1st of the taxing year. In the case subjudice, the taxes for the 2000 and 2001 tax years were paid on November 28, 2001. The taxes for 2000 were due by February 1, 2000 and the taxes for 2001 were due by February 1, 2001. The ad valorem taxes for both years were delinquent. The payment made herein was untimely and did not preserve Lindy’s right to litigate pursuant to La. R.S. 47:2110.

Due Process

Lindy argues the imposition of the December 31 payment deadline could effectively deny taxpayers expecting to take advantage of the limited exemption bestowed by State programs such as the RTA Contract due process of law. The *259 City respectfully disagrees with this assertion indicating a procedure is in place to pay taxes under protest and the action can be subject to a short statute of limitations.
The United States Supreme Court set forth the federal constitutional parameters imposed on the recovery of taxes in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dep’t of Business Regulation of Florida, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990); Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697, 702 (La.1993). In Church Point, the Louisiana Supreme Court found the state has two options to comply with Due Process. First, a state can provide the avenue of pre-deprivation by allowing the taxpayers the ability to meaningfully challenge the tax before paying it. Secondly, a state can choose the option of post-deprivation by affording its taxpayers an opportunity to challenge the validity of the tax and a certain remedy with the following procedural requirements: (1) only taxpayers paying “under protest” hnwould be entitled to relief; and, (2) the actions could be subject to short statute of limitations. Church Point, 614 So.2d at 703.
In the case sub judice, Lindy paid its taxes, therefore we are only concerned with post-deprivation relief. Under La. R.S. 47:2110, a person resisting payment of any amount of tax must pay the amount due to the appropriate officer and give the officer notice of his intention to file suit for the recovery of such tax. The officer shall segregate funds paid until the suit is filed. If the suit is filed timely contesting the correctness of the assessment pursuant to R.S. 47:1998, within thirty days of notice, the taxes being disputed will further be segregated until the dispute is resolved. Upon review, we find no due process violation. Lindy paid the amount of tax due under protest, untimely. Had he paid timely, Lindy would have been afforded the appropriate relief.
A procedure is in place to correct the mistaken assessment of ad valorem taxes. In the record, Lindy avers they asked the assessor to correct the mistake prior to paying the taxes under protest. They continue stating if the taxes are paid, then it will cause a breach of the RTA Contract that disallows payment of post-restoration taxes.
Title 47 has a procedure for review of an allegedly incorrect assessment of ad valo-rem taxes. Casey v. Johnson, 2001-0912, p. 4 (La.App. 4 Cir. 6/19/02), 821 So.2d 743, 746. An assessment valuation shall be challenged first by appeal to the Board of Review as provided by La. R.S. 47:1992, then by appeal to the Louisiana Tax Commission as provided by La. R.S. 47:1989, and finally by judicial review as provided by La. R.S. 47:1998. Id. Lindy did not follow the procedure found in the revised statutes to correct the incorrect assessment.

\uBreach of Contract

Lindy argues that by interpreting the relevant statutes to require taxes be paid timely, it would require Lindy to breach the RTA Contract. The RTA Contract specifically states the contract is void if taxes have been paid on the basis of an assessed valuation which reflects the improvement. The City contends by enforcing the deadline to pay protested taxes it would not require the RTA Contract to be breached. They argue Lindy should have paid the taxes timely and under protest which would have preserved the right to dispute the legality of the assessment as well as complied with the express terms of the RTA Contract.
We are revisiting a similar issue discussed in Casey, supra. In Casey, the plaintiff was applying for an extension of *260 his RTA Contract wherein the assessor reassessed his property increasing his ad valorem taxes. The plaintiff refused to pay the increased taxes because it would cause a breach of the RTA Contract. We found the plaintiff was correct in filing a writ of mandamus to compel the assessor to return the assessment to the pre-im-provement amount because the plaintiff had relied on the state’s communication not to pay or she would be ineligible for the contract renewal. Id. at p. 7, 821 So.2d at 748.
We find the instant case distinguishable. The contract at issue is between the previous owner, Clark, and the State. Lindy is not a party to the RTA Contract. Lindy was seeking a transfer of the contract, but did not begin inquiry until the day suit was filed, December 28, 2001. At the time the taxes were paid under protest and the day suit was filed, the taxes were delinquent. Lindy did not request a transfer of the RTA Contract prior to filing suit to place the assessor or the state on notice of the change of ownership. Lindy did not rely on any communication with the state regarding the RTA Contract in question. Had the taxes been paid timely 11gand the transfer of the RTA Contract been in process, a different result may have occurred.
We maintain the statutes read in para materia require ad valorem taxes to be paid by the 1st day of February of the taxing year to recover taxes paid under protest. Lindy failed to pay under protest the taxes timely to reserve their right to dispute the increased taxes. The City did not violate the due process requirements mandated by McKesson. The procedure for paying under protest would not cause a breach in the RTA Contract had it been followed correctly. We find this assignment does not have merit.

SECOND ASSIGNMENT OF ERROR

Lindy argues that if this court affirms the trial court’s decision, it should not have dismissed the entire lawsuit as the ad valo-rem taxes for 2001 were timely paid. Plaintiff maintains the taxes for 2001 were paid timely in November of 2001 under La. R.S. 47:1997B and 47:2110. They reasoned the taxes for 2001 could be paid through the end of 2001 to avoid potential enforcement proceedings.
The City maintains in order to pursue an action under La. R.S. 47:2110 for taxes paid under protest, the taxes must be paid timely. In Orleans parish, ad velorem taxes are due by February 1st of the year represented by the taxes, not by December 31st as the plaintiffs argue.
As we have stated herein, the taxes for both years 2000 and 2001 were untimely. In 1999, the taxes are assessed for the taxing year 2000. Ad valorem taxes for 2000 are due by February 1, 2000. After the aforementioned date, the taxes are considered delinquent. If taxes are not paid by December 31, 2000, the property may be sold at tax sale. In the case at bar, the taxes paid for tax year 2000 on November 28, 2001 were untimely.
113Ad valorem taxes for the tax year 2001 are assessed in 2000. The taxes are due for tax year 2001 by February 1, 2001. If the taxes were not paid by the aforementioned date, the taxes are considered delinquent. If taxes are not paid by December 31, 2001, the property may be sold at tax sale. In the case at bar, the taxes paid for tax year 2001 on November 28, 2001 were untimely. This assignment of error has no merit.

CONCLUSION

For the aforementioned reasons, we find neither assignment of error has merit. We affirm the trial court decision.
AFFIRMED.

. § 1997. Filing of rolls, payment of taxes, and sale of property for delinquent taxes; Orleans Parish
A. Beginning with the year 1963, on or before the fifteenth day of October of each year, copies of the rolls showing the final assessment of real and personal property shall be sent to the city and state tax collector for the parish of Orleans, the state comptroller, the recorder of mortgages for the parish of Orleans and the director of finance of the city of New Orleans. The collection of taxes shall begin on- the first day of January of the year for which such taxes are levied. Said taxes may be paid in two equal installments payable, respectively, in January and May of each year beginning with the year 1964; provided that the taxpayer shall pay one-half of said taxes during the month of January. Unless the taxpayer during the month of January shall pay all real estate, personal, and public utilities taxes on property owned by him in the parish of Orleans or one-half thereof, as hereinabove provided, the entire amount of such taxes shall become delinquent on the first day of February and said taxes shall bear ten per cent per annum delinquent penalty from the date of delinquency until paid. If a second installment is elected as hereinabove provided it shall be delinquent on the last day of May and shall bear the ten per cent per annum delinquent penalty from the date of delinquency until paid. On the thirty-first day of December of each year, commencing with December 31, 1963, the director of finance of the city of New Orleans, under such regulations as may be prescribed by the city council, shall forthwith proceed to advertise and sell for delinquent taxes the real estate and public utilities upon which táxes are delinquent and shall also proceed to enforce the collection of delinquent personal property taxes. The proceedings by the director of finance for the enforcement of the payment of delinquent real estate, personal property, and public utilities taxes shall be in the manner and form as now provided by law.
B. Beginning with the year 1971, on or before the fifteenth day of October of each year, copies of the rolls showing the final assessment of real and personal property shall be sent to the city and state tax collector for the parish of Orleans, the state comptroller, the recorder of mortgages for the parish of Orleans and the director of finance for the city of New Orleans. The collection of taxes shall begin on the first day of January of the year 1972, and for each year thereafter, for which such taxes are levied. Beginning with the year 1972, the entire amount of such taxes shall become delinquent on the first day of February and said taxes shall bear ten percent per annum delinquent penalty from the date of delinquency until paid. On the thirty-first day of December of each year, commencing with December 31, 1972, the director of finance of the city of New Orleans, under such regulations as may be prescribed by the city council, shall forthwith proceed to advertise and sell for delinquent taxes the real estate and public utilities upon which taxes are delinquent and shall also proceed to enforce the collection of delinquent personal property taxes. The proceedings by the director of finance for the enforcement of the payment of delinquent real estate, personal property, and public utilities taxes shall be in the manner and form as now provided by law.

. § 2110. Suits to recover taxes paid under protest
A. (1) No court of this state shall issue any process whatsoever to restrain or render any decision that shall have the effect of impeding the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution.
Text of par. (A)(2) effective until July 1, 2005
(2) Any person resisting the payment of any amount of tax due shall pay the amount due to the officer designated by law for the collection of such tax and shall give him, the parish or district assessor, and the Louisiana Tax Commission written notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If a suit is timely filed contesting the correctness of the assessment pursuant to R.S. 47:1998 and seeking the recovery of the tax, then that portion of the taxes paid that are in dispute shall be deemed as paid under protest and such amount shall be segregated and shall be further held pending the outcome of the suit. That portion of the taxes paid by the taxpayer to the officer which is neither in dispute nor the subject of a suit contesting the correctness pursuant to R.S. 47:1998, shall not be made subject to the protest.
(3) If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the officer to the date of such refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above during the period from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date such taxes are paid.
B. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of any and all questions arising in the enforcement of such right respecting the legality of any tax accrued or accruing or the method of enforcement thereof. In any such suit, service of process upon the officer or agency designated and provided for in R.S. 47:1998(A)(2) or (B)(3) or Subsection A of this Section shall be required.
Text of subsec. C effective until July 1, 2005
C. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action at law in the state or federal courts where any tax or the collection thereof is claimed to be an unlawful burden upon interstate commerce, or in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state. Upon request of a taxpayer and upon proper showing by such taxpayer that the principle of law involved in an additional assessment is already pending before the courts for judicial determination, the taxpayer, upon agreement to abide by the pending decision of the courts, may pay the additional assessment under protest but need not file an additional suit.
D. An assessment valuation shall be challenged only pursuant to the method or procedures as provided first in R.S. 47:1992, then R.S. 47:1989, and finally R.S. 47:1998.
Text of subsecs. E and F effective until July 1, 2005
E. Any taxpayer in the state who has paid his disputed taxes under protest as provided herein and who has filed suit under the provisions of R.S. 47:1856, 1857, or 1998 shall cause to be served in said suit notice to the officer or officers designated for the collection of said taxes in the parish or parishes where the property is located, the assessor or assessors for the parish or district, or parishes or districts, where the property is located and the chairman of the Louisiana Tax Commission.
F. Any taxpayer who has disputed his tax liability pursuant to R.S. 47:1856 or 1857 may appeal an adverse decision of any court as provided in the Code of Civil Procedure; however, a taxpayer shall not be required to post bond or provide other security in connection with such appeal.