774 So.2d 187 (2000)
Hilda Roberta Maestri LANDRY, Individually and as Trustee of Class Trust Created By Robert S. Maestri
v.
BLAISE, INCORPORATED.
No. 99-CA-2617.
Court of Appeal of Louisiana, Fourth Circuit.
August 2, 2000.
Rehearing Denied September 15, 2000.
Writ Denied December 8, 2000.
*188 C. Ellis Henican, Jr., New Orleans, Louisiana, Attorney for Plaintiff/Appellant.
Gregory C. Weiss, Meredith Margaret Miceli, Weiss & Eason, L.L.P., New Orleans, *189 Louisiana, Attorneys for Defendant/Appellee, Blaise, Inc.
Max Nathan, Jr., Andrew A. Braun, Sessions & Fishman, New Orleans, Louisiana, Attorneys for Defendant/Appellee, Bank One, Louisiana.
Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, Judge JAMES F. McKAY, III.
McKAY, Judge.
In this case, a lessor appeals from a trial court's maintaining of exceptions of prescription filed by a lessee and the successor in interest of the lessor's trustees. We reverse the trial court's maintaining of the lessee's exception but affirm the maintaining of the exception filed by the trustees' successor.
On October 28, 1949, Robert S. Maestri and Blaise, Incorporated (Blaise), which was owned by Edward Soniat, Earl Mendola, and Joseph Blasi, entered into a contract whereby Mr. Maestri leased to Blaise a parcel of land located at 1017 Iberville Street. The lease was for a term of fifty years, which was to run from May 1, 1950 through April 30, 2000. The lease called for Blaise to demolish a structure on the property and to build a four-story parking garage, which would also contain approximately 10,000 square feet of commercial space on the ground floor. The lease also stated that the "[l]essee agrees to maintain said building in good condition to make at its own expense, all repairs of any kind, whether ordinary or extraordinary, and Lessor is not to be responsible for any such repairs which may become necessary to said building." The lease further provided that the building would not become the property of the lessor or his heirs until the termination of the lease. On May 1, 1991, all the stock of Blaise was sold to William J. More.
In 1960, upon the death of her mother, Hilda Roberta Maestri Landry (Roberta) received an eleven and one-half percent (11½ %) naked ownership interest in the land and leasehold. This ownership was subject to the legal usufruct of Mr. Maestri. On May 4, 1974, Mr. Maestri died. At that time, Roberta became the outright owner of her eleven and one-half percent (11½ %) interest; the other eighty-eight and one-half percent (88½ %) interest in the land and leasehold was transferred to two trusts that were established by Mr. Maestri's will. National American Bank was appointed trustee of both of these trusts on May 4, 1977. Over the years, several of National American Bank's successors-in-interest also served as trustees.
One trust, established for the benefit of Roberta herself, received seventy-five percent (75 %) of Mr. Maestri's interest in the land and leasehold. This trust had four income beneficiaries. When the last income beneficiary died on March 14, 1991, this trust terminated and Roberta became the outright owner of seventy-seven and eight hundred seventy-five thousandths percent (77.875 %) of the land and leasehold.
The second trust, established for the benefit of Roberta's three children (the class trust) received twenty-five percent (25 %) of Mr. Maestri's interest in the land and leasehold. On July 6, 1994, Premier Bank, a successor-in-interest to National American Bank, resigned as trustee of the class trust. Thereupon, Roberta became the trustee.
On July 11, 1995, Roberta filed suit against Blaise alleging that Blaise had violated its obligation to maintain its building in good condition and make "all repairs of any kind, whether ordinary or extraordinary" as required and that the rent was delinquent. She prayed for the rescission of the lease and for all amounts necessary to bring the building into good condition. Blaise filed several exceptions, which the trial court overruled, and an answer and reconventional demand asking that Roberta be made to make the necessary repairs.
On August 2, 1996, Roberta served Blaise with a notice to vacate and subsequently *190 with a rule for possession. Thereupon, Blaise filed an amended reconventional demand. In response, Roberta filed several exceptions, which the trial court overruled. On February 10, 1998, Roberta filed a supplemental and amending petition, naming Bank One, a successor-in-interest to National American Bank, as an additional defendant. On January 26, 1999, Blaise filed an exception of prescription. On March 31, 1999, Bank One also filed an exception of prescription. The trial court maintained both of these exceptions and Roberta now appeals.
At issue in this appeal is whether the trial court erred when it sustained the defendants' exceptions of prescription. The plaintiff contends that the trial court made significant errors in both its application of the law and in its findings of fact. Appellate review of the law is simply a review of whether the lower court was legally correct or legally incorrect. Hidalgo v. Wilson Certified Express, Inc., 94-1322 (La.App. 1 Cir. 5/14/96), 676 So.2d 114; O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1 Cir.1990). As to factual matters, an appellate court may reverse a trial court only if it committed manifest error or its findings were clearly wrong. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1276 (La.1991); Goodliffe v. Parish Anesthesia Associates, 95-357 (La.App. 5 Cir. 10/18/95), 663 So.2d 769.
When deciding peremptory exceptions, including prescription, the court should resolve doubts by overruling the exception and giving the litigant its day in court. Woodlawn Park Ltd. Partnership v. Doster Constr. Co., Inc., 623 So.2d 645 (La.1993); Teachers Retirement System of La. v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984). Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished. Babkow v. Morris Bart, P.L.C., 98-0256 (La. App. 4 Cir. 12/16/98), 726 So.2d 423.
Under Louisiana law, prescription begins to run once there has been a determination that damage was sustained. This is not a determination on the merits; it is simply a determination that plaintiff sustained damage sufficient to support accrual of a cause of action against the defendants. Rayne State Bank & Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986). Damage is sustained, for prescription purposes, only when it has manifested itself with sufficient certainty to be susceptible to proof in a court of justice. The damage must be actual and appreciable in quality. Labbe Service Garage, Inc. v. LBM Distributors, Inc., 94-1043 (La.App. 3 Cir. 2/1/95), 650 So.2d 824; Gassen v. East Jefferson General Hospital, 96-590 (La.App. 5 Cir. 12/30/96), 687 So.2d 120, writ denied, 97-0738 (La.5/1/97), 693 So.2d 735. Accordingly if a petition does not show that it has prescribed on its face, the burden is on the party raising the objection of prescription to prove the facts to support prescription. Capitol House Preservation Co, L.L.C. v. Perryman Consultants, Inc., 98-1514 (La.App. 1 Cir. 12/10/98), 725 So.2d 523, 528; Paragon Development Group, Inc. v. Skeins, 96-2125 (La.App. 1 Cir. 9/19/97), 700 So.2d 1279; Tranum v. Hebert, 581 So.2d 1023 (La.App. 1 Cir.1991), writ denied, 584 So.2d 1169 (La.1991).
In the instant case, there is nothing in the plaintiff's petition that indicates that its claim against Blaise has prescribed. Therefore, in order for Blaise to have prevailed on its exception of prescription, it would have had to carry the burden of proof of proving that Roberta's cause of action arose before July 11, 1985. However, Blaise never established a starting date for prescription. Furthermore, the trial court never reached the point of deciding when Roberta had sufficient notice to begin the tolling of prescription; it merely found that she had the capacity to sue over ten years before she filed suit and held *191 that was enough to dismiss her suit.[1] The trial court clearly erred in finding that Roberta's action against Blaise had prescribed when no starting date was established.
We now turn our attention to whether the trial court erred in maintaining Bank One's exception of prescription. Essentially, Bank One argues that under La. R.S. 9:2234, a suit brought by a beneficiary against a trustee prescribes in one year from the date the trustee renders his final account to the beneficiary. Therefore, Bank One goes on to argue that since Roberta's Trust terminated in March of 1991 and Bank One's predecessor, Allerion Bank & Trust Company, rendered its final account on this trust to Roberta on or about October 10, 1991, any action Roberta had against Bank One relating to her trust prescribed by October 9, 1992. Likewise, Bank One argues that since its predecessor, Premier Bank, resigned as trustee of the Class Trust effective July 6, 1994, and rendered its final account on or about December 7, 1994, any action by or on behalf of the beneficiaries of the Class Trust prescribed by December 6, 1995. However, Roberta argues that neither Bank One nor its predecessors rendered "final accounts" within the meaning of La. R.S. 9:2088 because the banks rendered their accounts to the trust beneficiaries on a monthly rather than on a yearly basis.[2]
The trial court agreed with Bank One and rejected Roberta's argument that the accounts rendered by Bank One's predecessors were not final accounts. We agree with the trial court that Roberta's and the Class Trust beneficiaries' actions against Bank One have prescribed. La. R.S. 9:2088 requires that a trustee render an accounting to a trust beneficiary "at least once a year." Therefore, by rendering monthly accountings, Bank One and its predecessors more than complied with the requirements of the statute.
For the foregoing reasons, we reverse and remand the trial court's judgment as to its maintaining of Blaise's exception of prescription. We affirm the trial court's judgment in so far as it maintains Bank One's exception of prescription.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
NOTES
[1] Roberta may not have had the capacity to sue for repairs to be made at this time. According to the terms of the terms of the lease, Blaise actually owned the building during the term of the lease and the building would not revert to Mr. Maestri or his heirs until the lease expired on April 30, 2000.
[2] These accountings contained all the things which would have been required in an annual accounting.