ROSEMARY LEDET, Judge.
hEcetra N. Ames, plaintiff/appellant, appeals from a judgment granting a peremptory exception of prescription in favor of defendant, J.P. Morgan Chase & Co. f/k/a Bank One Corporation (“Bank One”), which dismissed the claims of the plaintiff. After reviewing the record and applicable law, we affirm in part, reverse in part, and remand for further proceedings.

Factual and Procedural Background

In 1998, plaintiff, Ecetra N. Ames, hired defendant, John B. Ohle, III, to provide tax and financial planning services. Ohle was employed by defendant, Bank One, from 1999 through 2002 in the bank’s Innovative Strategies Group. In December 1999, Ames executed an instrument establishing a Charitable Remainder Unitrust (“Trust”), which designated Ohle as trustee. Ames asserts that she initially funded the trust with almost $5 million, followed by contributions in almost $8 million over the next two years. Ames alleges that in 2001, Mr. Ohle approached her about investing in a hedge fund called Carpe Diem Dynamic Fund Linked Warrants (“Carpe Diem Warrants”). Ames agreed to invest $5 million in |2Carpe Diem Warrants. After the $5 million transfer was made, Ames alleges that Ohle instructed the Carpe Diem fund to withhold $250,000 as a fee for the purchase of the warrants. Ames asserts that she was not informed that there would be any fees for the purchase of the Carpe Diem Warrants. Ames asserts that at the same time Ohle purchased $4.75 million worth of Carpe Diem Warrants on Ames’s account, he transferred $2 million of the Trust’s funds to purchase additional Carpe Diem Warrants. This transfer involved a fee of $100,000, which Ames asserts was not disclosed to her.
Ames also asserts that defendant, Douglas Steger, at the direction of Ohle, directed the Carpe Diem fund to send $800,000 of the $850,000 of fees collected by Ohle to the bank account of Invested Interest, a company based in San Francisco, California and wholly owned by Individual “A.” Ames’s petition states that Individual “A” is an unnamed, non-defendant co-conspirator, who is an investment advisor and friend of Ohle. Ames asserts that on November 27, 2001, Ohle directed $347,834 to be transferred from the Trust to Carpe Diem. Subsequently, Ohle directed Carpe Diem to send the $347,834 in funds to Invested Trust. Ames alleges that Individual “A”, at the direction of Ohle, through several transactions sent a total of $375,000 of her money to a bank account owned by Kenneth Brown and his then wife at Gulf Coast Bank. Ames further alleges that another $267,634 of her money was transferred to a bank account owned by Ohle at Hibernia Bank. Ames asserts that she had no knowledge of these transactions.
13Ames alleges that Ohle and Brown used the funds improperly deducted from Ames’s Carpe Diem investment to fund Brown’s position as a third-party investor in the “Hedge Option Monetization of Economic Remainder” (“HOMER”), which is a tax strategy sold by Ohle and Bank One to high net-worth individuals. Ames further alleges that Ohle, Brown, and Bank One received significant income from their roles with regard to the HOMER tax strategy. Specifically, Ames asserts that Bank One received over $5,000,000 in fees for referring its clients to the HOMER strategy.
In March 2003, Ames requested that Ohle provide her with an accounting for the Trust. Ames asserts that Ohle falsely *390 told her that $350,000 in fees was paid entirely to Steger. After learning, in August 2003, of Ohle’s mishandling of the Trust, Ames and Ohle executed a settlement agreement. However, Ames asserts that the accounting did not apprise her of the following: money taken from the Trust that was funneled through Carpe Diem; the withdraws by Ohle from the Trust; or the use of Carpe Diem fees and Trust funds to fund the HOMER tax strategy.
In 2008, Ohle was indicted by a grand jury in the Southern District of New York for various fraud and tax offenses. Ames asserts that it was within the course of Ohle’s criminal trial that she discovered for the first time that Ohle benefited from the $350,000 of fees she and the Trust were charged for the purchases of Carpe Diem Warrants. In addition, Ames also asserts that it was at this time that |4she first learned of Ohle’s $347,834 transfer from the Trust to Carpe Diem to fund the HOMER tax strategy. In June 2010, Ohle was found guilty as charged.
After further details of Ohle’s mishandling of Ames’s Trust were disclosed throughout Ohle’s criminal trial, in October 2009, Ames filed suit against the same defendants in the instant case in federal court alleging claims under RICO as well as several state law claims. Ames v. Ohle, 2010 WL 5055893, p. *2 (E.D.La.2010). The federal court dismissed Ames’s RICO claims as untimely based on the “injury discovery” rule, which determines when a RICO claim accrues. Id. at *2, *4. The federal court held that Ames discovered the misappropriation of the funds in her Trust account in 2003 and that the four-year statute of limitations, which governs RICO claims began to run from that date. Id. at *2-3. Ames argued that the statute of limitations should be tolled due to Ohle’s fraudulent concealment of the full nature of his acts so that she would settle her claims. Id. at *3. However, the federal court determined that Ames could have conducted further discovery and learned about every unauthorized transaction from her trust account and due to her lack of due diligence she was not entitled to equitable tolling under the fraudulent concealment doctrine. Id. at *4. Further, the federal court declined to exercise jurisdiction over Ames’s remaining state law claims since the only federal law claims were dismissed at an early stage of the litigation. Id.
On January 14, 2011, Ames filed her petition in this suit. Bank One filed multiple exceptions, including exceptions of preemption, prescription and no cause of action, which were adopted by the other defendants, Brown and Steger. The | ^district court sustained Bank One’s exception of prescription by oral ruling on May 27, 2011. The court’s ruling was based on Ames’s knowledge of the existence of Bank One through the 2003 settlement agreement with Ohle. The court stated:
The problem I have with all of it is: As relates to the bank, I think the plaintiffs had knowledge of the bank; and it’s difficult to say that contra non valentum prevented them from pursuing action against the bank.
It is from this judgment that Ames has appealed.

Standard of Review

Ordinarily, a party asserting a peremptory exception of prescription bears the burden of proof. Trust for Melba Margaret Schwegmann v. Schwegmann, 09-968, p. 8 (La.App. 5 Cir. 9/14/10), 51 So.3d 737, 742. However, if prescription is evident from the face of the pleadings, the plaintiff will bear the burden of showing an action has not prescribed. Id. If evidence is introduced at the hearing on the per *391 emptory exception of prescription, the district court’s findings of fact are reviewed under the manifest error-elearly wrong standard of review. Randa v. Anco Insulations, Inc., 08-1163, p. 20 (La.5/22/09), 16 So.3d 1065,1082. If there is as an absence of evidence, the exception of the prescription must be decided upon the properly pleaded material allegations of fact asserted in the petition, and those alleged facts are accepted as true. Trust for Melba Margaret Schwegmann, 51 So.3d at 742. Further, in reviewing a peremptory exception of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claim. Id. Of the possible constructions of a prescriptive or preemptive statute, |fithe one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted. Rando, 16 So.3d at 1083.

Discussion

The first assignment of error Ames asserts is that the district court erred in granting Bank One’s exception of prescription where certain of her claims are subject to a ten-year prescriptive period and are not prescribed on their face. The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable, dela Vergne v. dela Vergne, 99-0364 (La.App. 4 Cir. 11/17/99), 745 So.2d 1271, 1275. The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action. Id. Plaintiffs petition alleges facts and specifically asserts eight causes of action: 1) violation of Louisiana Racketeering Act under La. R.S. 15:1353; 2) unjust enrichment; 3) breach of fiduciary duty; 4) breach of contract; 5) fraud; 6) detrimental reliance; 7) negligent misrepresentation; and 8) civil conspiracy. These claims were asserted against the Bank directly and based on the theory of respondeat superior.

Civil Violations of the Louisiana Racketeering Act

The first cause of action Ames asserts is a civil violation of the Louisiana Racketeering Act under La. R.S. 15:1351-56. Although these statutes are part of the Code of Criminal Procedure, they provide for a civil cause of action similar to the federal RICO statute. Thomas v. North 40 Land Development, Inc., 04-0610, p. |724 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160,1175. The civil remedies provision of the statute provides the applicable prescriptive period, which is five years. La. R.S. 15:1356(H).[1]

Unjust Enrichment

The second cause of action Ames assets is unjust enrichment. She contends that the defendants were unjustly enriched and that all the money taken from Ames as a result of their use of those funds should be returned to her. Ames is precluded from asserting a claim of unjust enrichment due to the presence of other remedies at law available to her. Dugas v. Thompson, 11-0178, p. 14 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1068 (citing La.C.C. art. 2298; Walters v. MedSouth Record Management, LLC, 10-0352, pp. 2-3 (La.6/4/10), 38 So.3d 241, 242). The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided. Id. Ames has other available remedies; she asserts several other claims against the Bank in her petition. Further, *392 it is irrelevant whether Ames’s other claims are prescribed. Id. Regardless whether Ames successfully pursues another available remedy, it does not give her the right to recover under the theory of unjust enrichment. Id.

Breach of Fiduciary Duty & Breach of Contract

The third cause of action Ames asserts in her petition is a breach of fiduciary duty claim against Bank One. She also asserts a fourth cause of action for breach |sof contract based on a fiduciary obligation. Specifically, Ames alleges that Ohle owed duties to her as Trustee, and Bank One owed duties to her as Ohle’s employer. Louisiana courts have applied La. R.S. 6:1124 to actions alleging a violation of a fiduciary duty against a financial institution. Holmgard v. First Nat’l Bank of Commerce, 96-0853, p. 10 (La.App. 4 Cir. 1/15/97), 687 So.2d 583, 588.
Under this statute, “[a]ny breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof.” La. R.S. 6:1124 (Emphasis added). Assuming Ames has a claim for breach of fiduciary duty, she was required to assert her claim within one year of its occurrence or when the cause of action accrues.

Fraud

The fifth cause of action Ames asserts is fraud. Ames asserts that her claims of fraud are subject to a ten-year prescriptive period and relies on language from this Court in déla Vergne, supra, which addresses the First Circuit’s opinion in Beckstrom v. Parnell, 97-1200 (La.App. 1 Cir. 11/6/98), 730 So.2d 942. This Court noted that the First Circuit in Beckstom determined that “a fiduciary’s simple negligence should be treated as an offense subject to a one year prescriptive period, while deliberate actions, such as fraud, misrepresentation or conversion would be subject to the ten year prescriptive period.” dela Vergne, 745 So.2d at 1275-76. This permits greater accountability for deliberate acts, but also requires a higher burden of proof. Young v. Adolph, 02-67, p. 10 (La.App. 5 Cir. 5/15/02), 821 So.2d 101,106.
InAmes’s petition alleged the circumstances constituting fraud with particularity as required by La. C.C.P. art. 856. The petition pleads detailed factual allegations of fraudulent misrepresentations made by defendants. The fraud is not merely that the defendants made misrepresentations, but that they, specifically Ohle, made “knowingly false affirmative misrepresentations and intentional omissions of material facts” in the management of Ames’s investments; failed to disclose money taken from the trust; falsely stated that money withdrawn without Ames’s knowledge was put in investment vehicles; and fraudulently and knowingly misrepresented to that he (Ohle) did not receive any of the amounts taken from the Carpe Diem Fund investment.
Due to the intentional fraudulent conduct of a fiduciary pled by Ames, we find that her claim for fraud is personal and subject to the ten-year prescriptive period as opposed to a negligence claim which is delictual and prescribes in one year.

Negligent Misrepresentation

The sixth cause of action Ames asserts is negligent misrepresentation. Louisiana courts have recognized claims for negligent misrepresentation as delictual actions subject to the one-year prescriptive period of La. C.C. art. 3492. Nat'l Council on Compensation Ins. v. Quixx Temporary Services, Inc., 95-0725, p. 3 (La.App. 4 Cir. 11/16/95), 665 So.2d 120,122.

*393
Detrimental Reliance

| inThe seventh cause of action Ames assets is detrimental reliance. In considering this claim the court must determine whether it is viewed as contractual in nature, and thus governed by the prescriptive period of ten years for personal actions, or delictual in nature, and thus governed by a one year prescription. Trinity Universal Ins. Co. v. Horton, 33,-157, p. 2 (La.App. 2 Cir. 4/5/00), 756 So.2d 637, 638. Louisiana courts have applied both prescriptive periods to claims of detrimental reliance because the nature of the action, rather than its label, governs which period applies. Id. The courts are not bound to accept a plaintiffs characterization of the nature of his cause of action if it is unsupported by factual allegations. Kroger Co. v. Barcus & Sons, Inc., 44,200, p. 3 (La.App. 2 Cir. 6/17/09), 13 So.3d 1232, 1235.
The Louisiana Supreme Court in Roger v. Dufrene, 613 So.2d 947 (La.1993), applied the distinction between nonfeasance and misfeasance to determine whether an action sounds in tort or contract for the purposes of prescription. In Roger, the Louisiana Supreme Court noted nonfea-sance was exclusively a breach of contract and that misfeasance could be a tort. Roger, 613 So.2d at 949. Nonfeasance of the performance of an obligation is considered a breach of contract claim governed by a ten-year prescriptive period, and misfeasance in the performance of a contract is governed by the tort prescription of one year. Id. In Roger, the Supreme Court stated:
The nature of certain professions is such that the fact of employment does not imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession. The duty imposed upon the insurance agent [the lawyer, |ndoctor, and accountant] upon whose advice the client or patient depends is that of “reasonable diligence” a breach of which duty results in an action in negligence.
Id. see also Copeland v. Wasserstein, 278 F.3d 472, 479 (5th Cir.2002) (The court applied this reasoning to a detrimental reliance claim against a financial advisor and determined that no specific promises were breached only the standard of care, which resulted in a delictual action).
Ames alleges in her petition that she detrimentally relied on false statements and omissions by defendants when she entered into risky investment vehicles, paid exorbitant fees, and entered into a settlement agreement. Ames does not allege nonperformance of any specific promises made by defendants which could be considered nonfeasance. Ames asserts that she relied on false statements and omissions, not specific promises that were never performed. Therefore, the conduct alleged by Ames in her claim for detrimental reliance is delictual nature and subject to the prescription of one year.

Civil Conspiracy

The eighth cause of action Ames asserts is civil conspiracy. The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law. Crutcher-Tufts Resources, Inc. v. Tufts, 07-1556, p. 3 (La.App. 4 Cir. 9/17/08), 992 So.2d 1091, 1094 (citing Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546). The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part. Thomas, 04-0610 at p. 23, 894 So.2d at 1174. Ames’s cause of action for civil conspiracy pled in her petition does not 1T ¡.clearly identity the underlying tort that forms the basis for the alleged conspiracy. However based on the facts pled the court *394 can conclude that the underlying tort is fraud or misrepresentation. The petition states:
Defendants, knowingly acted in concert to market and implement the risky investment vehicles and accompanying fraudulent and abusive tax shelter transaction ... they acted with full knowledge and awareness that the transactions were designed to give the false impression that the complex series of financial transactions were legitimate business transactions....
(Emphasis added). Because Ames’s claims for fraud and misrepresentation are subject to a one-year prescriptive period, her claim for civil conspiracy is likewise subject to a one-year prescriptive period.
Based on the foregoing, we find that Ames’s claims are subject to one, five, and ten-year prescriptive periods.
Ames’s second assignment of error is that the district court erred in granting Bank One’s exception of prescription because it failed to apply the correct standard to determine when her causes of action against the bank accrued. Under Louisiana law, prescription begins to run once there has been a determination that damage was sustained. Landry v. Blaise, Inc., 99-2617, p. 4, (La.App. 4 Cir. 8/2/00), 774 So.2d 187, 190. The determination is not one on the merits, but it is simply a determination that plaintiff sustained damage sufficient to support accrual of a cause of action against the defendants. Id. Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action. Barbe v. American Sugar Refining, Inc., 11-0544, p. 12 (La.App. 4 | lsCir. 12/14/11), 83 So.3d 75, writ denied, 12-0124, (La.3/23/12), 85 So.3d 92 (La.2012) (citing Campo v. Correa, 2001-2707, (La.6/21/02), 828 So.2d 502).
Constructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry. Id. It also includes knowledge or notice of everything to which a reasonable inquiry may lead. Id. Constructive knowledge is sufficient to commence the running of prescription. Barbe, 11-0544, p. 13, 83 So.3d 75.
Ames asserts that the district court erred by relying on the fact that she had knowledge of Bank One in 2003, specifically that Ohle was employed there, when determining that her claims against the bank had prescribed. Ames acknowledges that she knew about the existence of Bank One in 2003; however, she asserts that she did not know about the conspiracy engaged in by the defendants until, at the earliest, Ohle’s indictment in November 2008, and more completely until Ohle’s criminal trial in May 2010. However, after a review of the allegations detailed in Ames’s complaint, this court finds that Ames had constructive notice in 2003 sufficient to commence the running of prescription.
Ames asserts that she first learned of Ohle’s mishandling of her funds in March 2003, after an accounting was requested on her behalf. It is unclear what the accounting fully disclosed. However, Ames asserts that she was told that she had been charged with $350,000 in fees, which she did not authorize, and that the 114fees were paid entirely to Steger. Ames’s petition further details other alleged misrepresentations and omissions by Ohle, which she relied on when entering into the 2003 settlement agreement. Although Ames did not have actual knowledge of the full details of Ohle’s conduct, she had enough knowledge of his mishandling of her funds to excite attention sufficient to prompt further inquiry, which would be considered *395 constructive knowledge. It is unreasonable for Ames to have relied on the information Ohle gave her after she had already learned of his mishandling of her trust funds. Therefore, prescription began to run in March 2003.
As stated, Ames’s viable claims are subject to one, five and ten-year prescriptive periods. Ames did not file suit in federal court against the defendants until October 2009, which is beyond the one-year and five-year prescriptive periods. Based on the foregoing, Ames’s claims are prescribed except as to her claim for fraud which we find to have a ten-year prescriptive period.
Ames’s final assignment of error is that if her claims are prescribed on their face, the district court erred in failing to apply the doctrine of contra non valentem. She contends that the defendants’ acts of concealment and misrepresentations prevented her from discovering her injuries and tort causes of action.
The doctrine of contra non valentem agere nulla currit praescriptio prevents the running of liberative prescription when the cause of action is not known or reasonably knowable by the plaintiff. Cole v. Celotex Corp., 620 So.2d 1154, 1156 (La.1993). There are four instances recognized by the Louisiana Supreme Court where contra non valentum is applied to prevent the running of prescription:
lis(l) where there is some legal cause which prevented the courts or their officials from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though this ignorance is not induced by the defendant.
Dominion Exploration & Prod., Inc. v. Waters, 07-0386, p. 10 (La.App. 4 Cir. 11/14/07), 972 So.2d 350, 358.
Ames asserts that the third category of contra non valentum applies in this case due to the misrepresentations and omissions by Ohle in his 2003 accounting. The third category of contra non valentum applies when the defendant has done some act effectually to lull the victim into inaction and prevent him from availing himself of his cause of action. Dominion Exploration & Prod., Inc., 07-0386 at p. 11, 972 So.2d at 358. To trigger application of the third category, a defendant’s conduct that keeps the victim in ignorance must rise to the level of concealment, misrepresentation, fraud, or ill practices. Id. Where the plaintiff is able to establish such conduct, prescription is suspended until the plaintiff is made aware of the truth of the matter. Id. However, it is well settled that the principle of contra non valentum will not exempt a plaintiffs claim from running if his ignorance is attributable to his own willfulness, neglect, or unreasonableness. Dominion Exploration & Prod., Inc., 07-0386 at p. 14, 972 So.2d at 360.
Moreover, in Cole, supra, the Louisiana Supreme Court stated the following regarding prescription:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not 11fibe used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to *396 seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff’s action or inaction.
Cole, 620 So.2d at 1157 (Emphasis added) (citing Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987)). In this case, the issue is whether, in light of the information known to Ames, was she reasonable to delay in filing suit. Id. (citing Knaps v. B & B Chemical Co., Inc., 828 F.2d 1138,1140 (5th Cir.1987)).
We find it is unreasonable for Ames to not have made further inquiry into the information given to her by Ohle. She was aware to some extent of his misconduct. Ames asserts that she and her advisors, including an attorney and accountant, were given financial statements in 2003 from Ohle and that although they conducted an “extensive” investigation, they were unable to uncover the conspiracy. However, there are facts noted in Ames’s federal suit which question the thoroughness of the investigation into Ohle’s accounting. The federal court indicated that although Ohle allegedly advised Ames that the $350,000 in fees were paid entirely to Steger, at no point does Ames suggest that she expended any efforts to research what happened to the actual fee. Ames, 2010 WL 5055893, p. 3 (E.D.2010). The federal court further indicated that:
Ames argues that Ohle failed to disclose his transfer of an additional $347,834 from the Trust to Carpe Diem. However, these transfers were all available in the bank records of the Trust, which obviously could have been the subject of discovery with minimal effort. Indeed, in the final accounting that Ohle provided to Ames there is an entry for $347,834 as a “loan to LFC” on November 21, 2001. Ohle’s final accounting is replete with similar “loan” entries, despite the fact that he had no authority to loan any of the Trust’s funds. Ames was also 117aware that Ohle had deposited $4.1 million of Ames’ personal funds in the Trust’s bank account without her informed consent. Despite these warning signs of misconduct, Plaintiff agreed to settle all known and unknown claims she had with Ohle regarding his management of the Trust.
Id. There is no indication in the record that there was an inquiry into these issues during Ames’s investigation into Ohle’s accounting. Based on these facts, Ames was unreasonable in her inaction. Ames had enough information to excite attention and prompt further inquiry into these facts which would have revealed further details of Ohle’s misconduct. Thus, Ames’s reliance on the doctrine of contra non valen-tum is misplaced.
At the hearing on the exceptions of prescription in the instant case, the trial court explicitly held that contra non valentum did not prevent Ames from pursuing her claims against the bank. Based on a review of the record, we fail to find exceptional circumstances to warrant the application of contra non valentum.
Thus all of Ames’s claims are prescribed except as to her claim for fraud.

DECREE

For the foregoing reasons, we affirm the portion of the trial court’s judgment granting Bank One’s exception of prescription as to Ames’s claims for violation of Louisiana Racketeering Act under La. R.S. 15:1353, unjust enrichment, breach of fiduciary duty, breach of contract, detrimental reliance, negligent misrepresentation, and civil conspiracy. We reverse the) ^portion of the trial court’s judgment sustaining Bank One’s exception of prescription as to her claim for fraud and remand for further proceedings.
*397 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McKAY, J., concurs in the result.
ON APPLICATION FOR REHEARING
(Court composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge ROSEMARY LEDET).
ROSEMARY LEDET, Judge.
_JjWe grant rehearing for the sole purpose of clarifying our May 23, 2012 opinion in the following respect. We stated that since “Ames’s claims for fraud and misrepresentation are subject to a one-year prescriptive period, her claim for civil conspiracy is likewise subject to a one-year prescriptive period.” Ames v. Ohle, 11-1540, p. 12 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, 394. However, we determined that Ames’s claim for negligent misrepresentation is subject to a one-year prescriptive period and her fraud claim is subject to a ten-year prescriptive period. Ames, 11-1540, at p. 5, 97 So.3d at 390-91.
The precept for civil conspiracy is set forth under La. C.C. article 2324, which provides:
He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey, 09-1433, p. 22 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, 408; La.C.C. art. 2324. However, |¡>we noted that conspiracy by itself is not an actionable claim under Louisiana law. Ames, 11-1540, at p. 6, 97 So.3d at 391. Instead, the actionable element under Article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiffs injury. New Orleans Jazz and Heritage Foundation, Inc., 40 So.3d at 408.
In this case, the tortious conduct alleged is misrepresentation and fraud. Ames’s negligent misrepresentation claim is prescribed and is no longer actionable. However, we determined that Ames’s fraud claim has a prescriptive period of ten-years. Thus, Ames’s civil conspiracy claim based on fraud also has a prescriptive period of ten-years.
Bank One argues by allowing Ames’s fraud claim to go forward this Court circumvents La. R.S. 6:1124 that provides a one-year prescriptive period for breach of fiduciary duty by a bank. However, after a review of the legislative history of La. R.S. 6:1124, this Court in BizCapital Business & Industrial Development Corp. v. Union Planters Corp., 03-2208, p. 5 (La.App. 4 Cir. 9/8/04), 884 So.2d 623, 627, determined that the legislature did not intend to totally immunize banks from all legal duties in their relationship with customers and third parties. See also Priola Const. Corp. v. Profast Development Group, Inc., 09-342 (La.App. 3 Cir. 10/7/09), 21 So.3d 456.
Ames alleges that Bank One’s conduct was more than a passive failure to properly supervise Ohle but were affirmative actions to conceal their self-dealing transactions. The alleged intentional and deliberate acts are independent of the fiduciary duty owed by Bank One. Therefore, | sAmes’s fraud action is personal in nature as defined by La. C.C.P. art. 422 and subject to a ten-year prescriptive period.
CLARIFIED IN PART ON PLAINTIFF’S REHEARING AND DEFENDANT’S REHEARING DENIED.

. La. R.S. 15:1356(H) provides in pertinent part:
Notwithstanding any other provision of law, a criminal or civil action or proceeding under this Chapter may be commenced at any time within five years after the conduct in violation of a provision of this Chapter terminates or the cause of action accrues.