KITTY DUNN, ET AL.

VERSUS

REGIONAL TRANSIT
AUTHORITY, ET AL.

\*      NO. 2022-CA-0506

\*

     COURT OF APPEAL

\*

     FOURTH CIRCUIT

\*

     STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-02843, DIVISION "C"
Honorable Sidney H. Cates, Judge
\* \* \* \* \* \*
**JUDGE KAREN K. HERMAN**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge
Karen K. Herman)

**LOBRANO, J., CONCURS IN THE RESULT**

Roy A. Raspanti
ATTORNEY AT LAW
110 Veterans Memorial Boulevard, Suite 360
Metairie, Louisiana 70005-4930

     COUNSEL FOR PLANTIFFS/APPELLANTS

Kriste T. Utley
Ross A. Ledet
BOYKIN & UTLEY
400 Poydras Street, Suite 1540
New Orleans, Louisiana 70130
-AND-
N. Sundiata Haley
HALEY LAW FIRM, LLC
650 Poydras Street, Suite 2015
New Orleans, Louisiana 70130

     COUNSEL FOR DEFENDANTS/APPELLEES

           **AFFIRMED IN PART AND REVERSED IN PART**
                  **July 20, 2023**

Plaintiffs in this action are former employees and retirees of New Orleans Public Service Incorporated ("NOPSI") and/or Transit Management of Southeast Louisiana ("TMSEL"). On March 15, 2019, Plaintiffs sued the Regional Transit Authority ("RTA") and TMSEL (collectively "Defendants"), asserting that Defendants had denied them benefits owed to them under their employees' welfare benefits plan.

On January 8, 2021, Defendants filed an exception contending that Plaintiffs' claims had prescribed. On February 14, 2022, the trial court sustained that exception. Plaintiffs filed a timely appeal from that judgment. After an initial review of the judgment of February 14, 2022 this Court remanded the matter to the trial court on January 18, 2023, with instructions to amend its February 14, 2022, judgment to make it final and appealable pursuant to La. C.C.P. art. 1918 by including the appropriate and necessary decretal language. On March 17, 2023, the trial court complied with those instructions, rendering a judgment sustaining the exception of prescription and dismissing all of Plaintiffs' claims. For the reasons discussed below, we affirm that judgment as to all Plaintiffs except Doris Lloyd,

1

Allen Santee, and Wardell Williams. For these individuals, the judgment is reversed.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs' petitions and the parties' briefs set out the following pertinent facts. NOPSI was a privately held company which, prior to 1983, operated the public transit system in Orleans Parish. In June 1983, the RTA acquired the public transit system from NOPSI, and TMSEL began operating and managing the system. With that acquisition, NOPSI employees became TMSEL employees.

Prior to RTA's acquisition, in 1978, NOPSI, the Amalgamated Transit Union, and the City of New Orleans entered into an "Agreement Pursuant to Section 13(c) of the Urban Mass Transportation Act of 1964" (the "13(c) Agreement"). The purpose of this agreement was to provide various "fair and equitable arrangements" for the workers of the New Orleans public transit system. On March 17, 1983, in the months before the acquisition was finalized, the RTA and TMSEL, as successors in interest to NOPSI, agreed to assume "the rights, duties and responsibilities" contained in the 13(c) Agreement. Section 2 of that agreement required that RTA and TMSEL preserve and continue the rights and benefits of those individuals formerly employed by NOPSI.

Contemporaneous with the acquisition of the transit system, RTA, TMSEL, and NOPSI entered into the "Employee and Retiree Pension and Welfare Agreement" ("Retiree Welfare Benefit Agreement"), whereby RTA and TMSEL agreed to provide future retirees the same coverage and benefit levels that NOPSI had provided. Furthermore, the Retiree Welfare Benefit Agreement required RTA and TMSEL to set up a funding structure in order to ensure the pension benefits would be paid.

From 1983 until March 2006, the Defendants administered the employee welfare benefit plan as it had been administered by NOPSI. That changed in the aftermath of Hurricane Katrina; because of the economic catastrophe wrought by that storm, RTA suffered a revenue crisis. As one of the results, the Defendants began charging medical insurance premiums to Plaintiffs (and their spouses and dependents) and also stopped providing quarterly Medicare premium and deductible reimbursements to Plaintiffs over the age of 65 years old.

This change in the administration of the benefits plan came to a head in early 2006. In a letter dated March 6, 2006, TMSEL General Manager William J. Deville explained to the employees and retirees that Hurricane Katrina had "decimated" their operation, and that TMSEL and the RTA did not have the financial resources to continue operating the public transit system and pay the benefits promised by the agreements. Mr. Deville closed his letter with the following language:

> Please be assured that we are doing everything in our power to acquire resources, to rebuild, to restore systems and services and to reemploy as many people displaced by disaster as possible. We will not ease-up on this journey.
>
> These are not usual times or usual decisions, but nonetheless, I wish you all the best for the days ahead.

Plaintiffs assert that in these communications RTA and TMSEL led them to believe that these changes were temporary and that full benefits would be restored in the future.

The reduction of benefits continued for more than five years through January of 2012, when Defendants further reduced the benefits by increasing the portion of the medical insurance premiums Plaintiffs would have to pay. In February 2012, three of the named Plaintiffs met with counsel for the

RTA to discuss retiree welfare benefits. At that meeting, RTA and TMSEL were asked to reinstate the various welfare benefits promised by NOPSI. In response, Plaintiffs were told that RTA and TMSEL were unwilling to reinstate the various welfare benefits. Further, they were advised that if Plaintiffs were to initiate litigation against the RTA regarding the welfare benefits, RTA would require Plaintiffs to pay 100% of medical insurance premiums.

On October 8, 2012, a group of retirees made a formal written demand for the reinstatement of their welfare benefits, as well as payment of damages resulting from the violation of fiduciary duties by RTA and TMSEL. Defendants did not respond in writing to that demand.

On December 31, 2012, 39 retirees filed suit against the RTA and TMSEL in federal court, alleging federal claims under ERISA and state law claims. *See Mary Smith, et al v. Regional Transit Authority,* et al. No. 12-3059, United States District Court for the Eastern District of Louisiana ("*Mary Smith*").[1] The complaint alleged various federal statutory violations as well as supplemental state law claims. In a judgment dated October 23, 2015, the court granted a motion for summary judgment filed by the Defendants and dismissed all claims with prejudice. That judgment was affirmed on appeal by the U.S. Fifth Circuit Court of Appeals. *See Smith v. Regional Transit Authority,* 827 F.3d 412 (5th Cir. 2016).

On March 15, 2019, Plaintiffs filed the instant suit. Plaintiffs filed several amended petitions to add plaintiffs and allegations. The initial group of 164 plaintiffs grew to a total of 183 plaintiffs with the "Fourth Supplemental and

---

[1] No plaintiff from the instant suit was a plaintiff in that federal action.

Amended Petition." In the various petitions, Plaintiffs alleged causes of action grounded in several theories, which will be discussed below.

The Defendants initially responded to the petitions with a Dilatory Exception of Vagueness in which they argued that Plaintiffs needed to include in their allegations the dates they each retired and suffered the complained of damages. That exception was granted on October 23, 2020. Plaintiffs were given 60 days to amend their petition and include all of the additional information. Plaintiffs filed their "Third Supplemental and Amending Petition" supplying the retirement dates on November 28, 2020.

On January 21, 2021, Defendants filed a Peremptory Exception of Prescription maintaining that the Petition was prescribed on its face. On August 4, 2021, Plaintiffs filed their Sixth Supplemental and Amending Petition to counter the assertion that their claims had prescribed. In that pleading, Plaintiffs cited the *Mary Smith* suit against these same Defendants in U.S. District Court referred to above. Plaintiffs claimed to be solidary co-obligees with the *Mary Smith* plaintiffs and alleged that the Defendants were co-obligors to Plaintiffs in both suits. Therefore, Plaintiffs alleged that pursuant to Louisiana law, the filing of the *Mary Smith* suit had interrupted prescription.

The Exception of Prescription was argued before the trial court on November 5, 2021, with no evidence offered by either side. As indicated above, the trial court sustained the exception and dismissed Plaintiffs' claims. In its Reasons for Judgment dated February 14, 2022, the trial court applied the three-year prescriptive period set out by La. C.C. art. 3494. The trial court also concluded that "[P]rescription began to run from either the date of direct

5

notification benefit reduction on March 6, 2006, or the date of retirement when the Plaintiffs began actually receiving the reduced benefits from TMSEL."

**DISCUSSION**

**Standard of Review**

In *Boulmay v. Heebe,* 2017-0638, pp. 3-4 (La. App. 4 Cir. 12/27/17), 238 So.3d 459, 462, this Court reiterated the standard of review relative to peremptory exceptions of prescription as follows:

> Ordinarily, a party asserting a peremptory exception of prescription bears the burden of proof. *Trust for Melba Margaret Schwegmann v. Schwegmann*, [20]09-968, p. 8 (La. App. 5 Cir. 9/14/10), 51 So.3d 737, 742. However, if prescription is evident from the face of the pleadings, the plaintiff will bear the burden of showing an action has not prescribed. *Id.* If evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.,*[20]08-1163, p. 20 (La. 5/22/09), 16 So.3d 1065, 1082. If there is [ ] an absence of evidence, the exception of [ ] prescription must be decided upon the properly pleaded material allegations of fact asserted in the petition, and those alleged facts are accepted as true. *Trust for Melba Margaret Schwegmann*, 51 So.3d at 742. Further, in reviewing a peremptory exception of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claim. *Id.* Of the possible constructions of a prescriptive or preemptive statute, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted. *Rando*, 16 So.3d at 1083.

quoting *Ames v. Ohle*, 2011-1540, pp. 5-6 (La. App. 4 Cir. 5/23/12), 97 So.3d 386, 390-91, *decision clarified on reh'g* (7/11/12).

Again, at the hearing on the exception of prescription, no evidence was introduced, as the parties merely argued their positions. However, Plaintiffs did attach as exhibits approximately 230 pages of various documents to their Sixth Supplemental and Amending Petition and statements from Plaintiffs, both sworn and unsworn, to the Seventh Supplemental and Amending Petition. In their brief,

6

Plaintiffs maintain that these attachments are evidence, and therefore must be considered as evidence of their contents in this Court's review. We disagree.

Article 853 of the Code of Civil Procedure provides that "any written instrument which is an exhibit to a pleading is a part thereof." However, the jurisprudence construing this provision makes clear that such an exhibit, not formally introduced into evidence, is not evidence but instead is only a part of the pleading, and pleadings are not evidence. In *Andrews v. Marts,* 2022-0576, p. 6 (La. App. 1 Cir. 11/15/22), 356 So.3d 1059, 1062-63, the First Circuit Court of Appeal explained what effect reviewing courts are to give to attachments to pleadings:

> A copy of any written instrument that is an exhibit to a pleading is a part thereof. [La. C.C.P.] art. 853. However, the documents are not evidence; they are simply part of the pleadings. *Jackson v. Gordon,* 381 So.2d 520, 521 (La. App. 1 Cir. 1980). Pleadings are not evidence. *In re Melancon*, 2005-1702 (La. 7/10/06), 935 So.2d 661, 666. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. *Revelry Food Group, LLC v. Nguyen Property Investment, LLC*, 2021-0881 (La. App. 1 Cir. 2/25/22), 340 So.3d 1151, 1155 n.2.

> In summary, the evidence in question was not properly introduced and admitted in the trial court and therefore may not be reviewed by this court. See *Denoux v. Vessel Management Services, Inc.*, 2007-2143 (La. 5/21/08), 983 So.2d 84, 88-89.

As Plaintiffs in the instant matter made no offer of evidence at the hearing on the exception, we will not consider these attachments as evidence of their contents. Thus, we must confine our review to the "properly pleaded material allegations of fact asserted in the petition." *See Ames,* 2011-1540 at p. 5, 97 So.3d at 391.

**The Character of Plaintiffs' Action**

In *Ames*, this Court explained that "[t]he nature of a cause of action must be determined before it can be decided which prescriptive term is applicable." *Ames*, 2011-1540 at p. 6, 97 So.3d at 391 (citing *dela Vergne v. dela Vergne*, 1999-0364 (La. App. 4 Cir. 11/17/99), 745 So.2d 1271, 1275). "The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action." *Id.*

Indeed, Plaintiffs have made this precept a central part of their argument. In their brief, they beseech this Court to consider this a claim for breach of contract and point to the number of times the word "contract" appears in their petition and amended petitions. During oral argument both before the trial court and this Court, Plaintiffs have continued to insist that their claim is one based in breach of contract. We agree; the nature of the cause of action here is breach of contract. However, not all contract actions are subject to the same prescriptive period. In this matter, the contract is one for deferred compensation.

A review of the Civil Code articles regarding prescriptive periods illustrates this point. La. C. C. art. 3499 provides that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." La. C.C. art. 3499, Revision Comments (b) clarifies that the general rule for a personal action is ten years, "in the absence of a legislative provision that either establishes a shorter or longer period, or declares the action to be imprescriptible. Shorter prescriptive periods are established in revised C.C. Arts. 3492 through 3498. . . ."

In La. C.C. art. 3494, the Legislature provided that the prescriptive period would be three years when the action is one for the breach of five different types of contracts:

8

(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board;

(2) An action for arrearages of rent and annuities;

(3) An action on money lent;

(4) An action on an open account; and

(5) An action to recover underpayments or overpayments of royalties from the production of minerals, provided that nothing herein applies to any payments, rent, or royalties derived from state-owned properties.

All five of these actions contemplate a contract or agreement between the parties; however, it is apparent that the Legislature chose to apply a three-year prescriptive period to these kinds of contracts rather than the ten-year general prescriptive period set out in La. C.C. art. 3499. Because the contract between Plaintiffs and Defendants here is one for the recovery of compensation that is contemplated by La. C.C. art. 3499(1), we conclude that the applicable prescriptive period is three years.

**Commencement of Prescription**

La. C.C. art. 3495 provides that the three-year prescriptive period 'commences to run from the day payment is exigible." Again, the comment following this provision clarifies that "prescription commences to run from the day a cause of action arises and its judicial enforcement is possible." La. C.C. art. 3495, Revision Comments (b). In their trial court pleadings, briefs to this Court and oral arguments, Plaintiffs maintain that prescription did not begin to run until the February 2012 meeting, when the Defendants made clear that there would be no resumption of the payment of benefits as promised by NOPSI prior to the transfer to TMSEL. Thus, Plaintiffs argue that the trial court erred in concluding

that prescription began to run in 2006 or on the respective retirement date for each Plaintiff. We disagree.

In its Reasons for Judgment dated February 14, 2022, the trial court explained that in deciding the appropriate prescriptive period and the time of commencement it was relying on the Louisiana Supreme Court's holding in *Born v. City of Slidell*, 2015-0136 (La. 10/14/15), 180 So.3d 1227. We find that holding applicable as well.

In *Born*, the plaintiff was employed by the City of Slidell from 1984 until he retired on August 1, 2008, when he was sixty-years old. He began drawing retirement benefits from the City's Municipal Employee's Retirement System. Pursuant to the City's Code of Ordinances, health insurance premiums were paid for City employees and retired City employees and officials. The applicable Ordinance was amended with an effective date of August 26, 2008, to require City retirees reaching the age of sixty-five to apply for Medicare, and the City would pay Medicare Advantage at no cost to the retiree.

On May 1, 2013, Born received correspondence from the City "informing him that because of his impending sixty-fifth birthday on July 1, 2013, he would no longer be eligible for the City's health insurance, as '[a]ll retirees and spouses 65 and older with Medicare Parts A and B must enroll in Humana Group Medicare.'" *Born*, 2015-0136 at p. 3, 180 So.3d at 1229. The City further advised Born that if he was not eligible for Medicare, "he must present the City with adequate documentation to that effect." *Id*.

In response, Born wrote to the City and indicated his objections and desire to remain on the City's health plan, but was unsuccessful. Thereafter, on July 25, 2013, Born filed a petition for declaratory judgment, temporary restraining order,

preliminary injunction and permanent injunction, alleging that he met the requirements listed in the Ordinances in effect at the time of his retirement on August 1, 2008, and should be able to continue participation in the City's health insurance plan wherein the City paid one hundred percent of the family coverage cost. Born "argued he had a vested right to the benefit promised by the City of Slidell in [the ordinance], and the City was intending to breach its contract with [him], thereby depriving him of his vested right to the promised benefit." Consequently, Born "requested a declaration of his right to continue participating in the plan and an injunction prohibiting the City from removing plaintiff from his desired health insurance plan with the City of Slidell." *Id.*

The City filed an exception of prescription, contending that Born's suit was subject to the three-year prescriptive period and was prescribed because it was filed on July 25, 2013, five years after the passage of the ordinance effective August 26, 2008. The trial court denied the exception of prescription, finding that prescription would begin to run at the time the City removed Born from the City's health insurance plan. Therefore, Born's suit was timely filed just after his sixty-fifth birthday. The trial court also granted Born's request for a declaratory judgment that he and his family were entitled to continue participation in the City's health care plan where the City paid one hundred percent of the premium. The court of appeal affirmed.

The Louisiana Supreme Court also affirmed, rejecting the City's argument that Born's claim against the City became exigible when the Ordinance was effective on August 26, 2008. The Supreme Court relied upon La. C.C. arts. 3494 and 3495. Pursuant to La. C.C. art. 3495, "prescription commences to run from the day payment is exigible." The Supreme Court found that if Born had attempted to

file suit to remain on the City's healthcare plan before his sixty-fifth birthday, "his claim would likely have been dismissed as premature under La. C.C.P. art. 423" because his claim for coverage after his sixty-fifth birthday became exigible on his sixty-fifth birthday. *Id*. at p. 10, 180 So.3d at 1233. Thus, Born's suit filed just after his sixty-fifth birthday "was timely filed and in no way prescribed." *Id*. at p. 11, 180 So.3d at 1234.

We agree with the trial court's application of *Born*, both as to the three-year prescriptive period and the date Plaintiffs' claims became exigible. Both in their briefs and in oral argument, Plaintiffs have been unable to distinguish their cause of action from that asserted by the plaintiff in *Born*, or otherwise explain why this Court is not constrained by that holding.

**Plaintiffs' Alternative Theories of Recovery**

We likewise find no error in the trial court's conclusion that Plaintiffs' claims under alternate theories of recovery have prescribed. As discussed above, the character of the claims made by Plaintiffs in the instant case are claims for deferred compensation. We find Plaintiffs' efforts to repackage their claims for deferred compensation under labels such as "stipulation *pour autri*," "breach of fiduciary duty" or "unjust enrichment" to be disingenuous and meritless. No matter what label Plaintiffs' apply, their claims are for breach of the type of agreement governed by La. C.C. art. 3494 and therefore prescribed.

**Continuing Tort**

Likewise, we reject Plaintiffs' argument that prescription began to run anew each year and, therefore, the claims have "never prescribed." This same argument was raised and rejected by the U. S. Fifth Circuit Court of Appeals in *Smith v. Regional Transit Authority*, 827 F.3d 412, 422 (5th Cir. 2016). As noted in that

opinion, the change in the benefit plan was a single violation followed by continuous consequences. The theory of a continuing tort requires that the "operating cause of injury be a continuous one which results in continuous damages." *See Crump v. Sabine River Authority*, 98-2326, p. 7 (La. 6/29/99), 737 So.2d 720, 726. We agree with that analysis.

**Prescription Was Interrupted by *Mary Smith* Suit**

Finally, we find no error with the trial court's finding that the lawsuit filed by Ms. Smith and her co-plaintiffs did not act to suspend the running of prescription vis-à-vis these Plaintiffs. In the Reasons for Judgment dated February 14, 2022, the trial court stated:

> Pursuant to La. C.C. Art. 1787, when an obligor owes a separate performance to each obligee, the obligation is several. As a result, prescription runs independently on each separate obligation, and Plaintiffs in this case cannot rely on the previously filed *Mary Smith* litigation to interrupt prescription. (Emphasis added.)

We agree. La. C.C. art. 1787 provides "[w]hen one obligor owes a separate performance to each of different obligees, the obligation is several for the obligees." In the instant case, Defendants owed each Plaintiff a benefit amount based on numerous factors including, length of service and date of retirement. Naturally, these benefit amounts would differ. Similarly, the benefits owed to each Plaintiff would have been payable at different times based on their respective retirement dates. Because these factors support the trial court's finding that the obligations were several in nature, prescription would run independently on each separate obligation. That being the case, Plaintiffs' argument that prescription was interrupted by the filing of the *Mary Smith* suit is without merit.

**Claims of Doris Lloyd, Allen Santee, and Wardell Williams**

Again, the trial court correctly held that the prescriptive period applicable to Plaintiffs' claims was three years. Likewise, the trial court's conclusion that prescription commenced to run either from March 6, 2006 or the date of each Plaintiff's retirement was correct. Per the allegations contained in the Plaintiffs' Second and Third Supplemental and Amending Petitions, Plaintiff Doris Lloyd retired on August 1, 2018, Plaintiff Allen Santee retired on January 1, 2019, and Plaintiff Wardell Williams retired on May 1, 2016. The original Petition was filed on March 15, 2019. Accordingly, on the face of the pleadings, the claims of Doris Lloyd, Allen Santee, and Wardell Williams are not prescribed.[2] Therefore, the judgment is reversed as to these individuals.

**CONCLUSION**

For the above reasons, the trial court's March 17, 2023 judgment is affirmed in part and reversed in part.

**AFFIRMED IN PART AND REVERSED IN PART**

---

[2] We note that Defendants concede in their Appellee Brief that "Doris Lloyd [], Wardell Williams [], and Allen Santee [] are the only Appellants alleged to have retired after March 15, 2016."